(876 P.2d 212)
No. 70,253

In the Matter of the Estate of Ruby M. Campbell, Deceased.

Opinion filed June 17, 1994. 

*Chris O. Concannon*, of Concannon Law Offices, of Hugoton, for appellant.

*Gary R. Hathaway*, of Hathaway, Kimball & Campbell, of Ulysses, for appellee.

Before LARSON P.J., RULON, J., and LARRY T. SOLOMON, District Judge, assigned.

SOLOMON, J.: Tadd A. Black, executor of the estate of Ruby M. Campbell, deceased, appeals from a decision of the trial court refusing to enforce an *in terrorem* clause in the decedent's will dated October 24, 1990. Black contends the trial court should have enforced the *in terrorem* clause against two of the beneficiaries of decedent's will, Terry Campbell and Barbara Walters. Black's contention is based on the conduct of Campbell and Wal-

ters in challenging the October 24, 1990, will on the grounds that the decedent lacked testamentary capacity and was unduly influenced in the execution thereof, and further on the ground that Campbell and Walters instituted a quiet title action concerning some of the estate property during the course of administration. Based on the specific facts of this case, we affirm.

The facts are undisputed. In January 1990, approximately 11 months prior to her death, Ruby M. Campbell established a voluntary conservatorship and appointed her son, Terry Campbell, as conservator. She died testate on December 12, 1990. On December 13, 1990, Terry and Barbara Walters (decedent's daughter) offered decedent's will dated August 19, 1987, for probate. Campbell and Walters were beneficiaries under the will and also were named co-executors. On December 17, 1990, Tadd A. Black filed an answer and cross-petition for probate of will and issuance of letters testamentary, offering a second will executed by decedent on October 24, 1990. The later will named Black as executor rather than Campbell and Walters. Campbell and Walters were unaware that the later will existed when they filed their petition on December 13, 1990.

On the same day decedent executed the second will, she delivered written instructions to Citizens State Bank of Hugoton and Southwestern Savings & Loan of Hugoton directing them to convert her pay-on-death accounts and joint tenancy accounts to reflect her as the sole owner. Campbell and Walters had an interest in some of these accounts, although they had not contributed funds thereto. Both financial institutions refused to comply with decedent's request since she was under a conservatorship. The institutions indicated that they would require a court order authorizing the change of ownership of the accounts.

On January 4, 1991, Campbell and Walters filed a reply to the cross-petition of Black. Their reply challenged decedent's capacity to make the October 24, 1990, will and further alleged she was unduly influenced in the execution thereof by various family members.

Black was not a beneficiary under either will. Both wills provided that decedent's estate should be divided among her children, Terry Campbell, Barbara Walters, Harold Campbell, and Yvonne Carlile.

The August 1987 will contained an *in terrorem* clause which provided that any heir that contested any provision of the will would receive $10 as his or her total inheritance. The October 24, 1990, will contained the following *in terrorem* clause:

"EIGHTH: Should any person whomsoever, whether named herein or not, object to the probate of this will or any provision thereof, or interfere or attempt to interfere with administration of my estate hereunder, then said person shall take no part or portion of my estate, and any part or portion so withheld shall pass to, vest in, and is hereby given, devised and bequeathed to those devisees not so objecting equally, share and share alike if more than one."

The will admission/will contest issues were tried to the court on March 20, 1991. On March 29, 1991, the trial court issued a written opinion concluding that the decedent was competent to make her Last Will and Testament dated October 24, 1990. The trial court stated:

"Although she was suffering many medical complications, including malignancy and hardening of the arteries, and was under considerable medication, the test is whether or not she understands the nature and extent of her property and the natural objects of her bounty. Her demeanor, as reflected in the video, at the time of the will indicated some question about her understanding of the full nature of her property, but no doubt about her four children and that she wished them to divide the property evenly. Medical records reflect that she suffered intermittent periods of confusion, and that there was no attempt by her doctor to evaluate her competency on the date of the execution of the will. As an indication of her condition, he replied to a question (page 34) as 'The only thing I can say to that is at times she was confused, and at times she was as lucid as the four of us,' (presumably the witness, two lawyers and the court reporter)."

In concluding that decedent was competent to make her will dated October 24, 1990, the trial court gave considerable weight to the testimony of an acquaintance who had known decedent for 48 years. That witness testified that on the date of the execution of decedent's will, decedent was, in effect, competent. The trial court concluded that the legal presumption of decedent's competency was not overcome by the evidence presented by Campbell and Walters. The journal entry reflects the ruling that decedent was not under undue influence when she executed the October 24, 1990, will.

On May 9, 1991, Black, as the appointed executor of the estate of Ruby M. Campbell, moved the court for an order requiring

payment of the pay-on-death/joint tenancy accounts at Citizens State Bank and Southwest Savings & Loan to the estate. Campbell and Walters filed a reply objecting to the motion, arguing that since the decedent was under a conservatorship on October 24, 1990, she did not have the legal capacity to request a change of ownership of the accounts; that conservatorship action was necessary to initiate a proper change of ownership of the accounts; and that the accounts were not assets of the estate. On June 10, 1991, Campbell and Walters filed an independent civil action in Stevens County District Court, claiming ownership of the pay-on-death/joint tenancy accounts and requesting quiet title therein. Black, Citizens State Bank, and Southwest Savings & Loan were the named defendants. The financial institutions answered, requesting the court to determine rightful ownership of the accounts. Black also answered, alleging decedent had the legal capacity to make the written request for change of ownership of the accounts on October 24, 1990; that the requested change of ownership was testamentary in nature; and that the funds should be set over to the estate. On April 6, 1992, the district court granted summary judgment in favor of the estate. The district court distinguished the authority relied upon by Campbell and Walters, *i.e., In re Estate of Briley,* 16 Kan. App. 2d 546, 825 P.2d 1181 (1992), on the ground that the instant case dealt with a voluntary conservatorship for the convenience of the conservatee without a finding of incompetency, whereas *Briley* dealt with a finding of incompetency. Campbell and Walters appealed the district court's ruling. The Court of Appeals affirmed the district court's decision in *Campbell v. Black,* 17 Kan. App. 2d 799, 844 P.2d 759 (1993).

On April 7, 1993, Black filed a motion for determination of inheritance, invoking the *in terrorem* clause of decedent's October 24, 1990, will. Black argued that Campbell and Walters should forfeit their inheritance by virtue of the fact they challenged decedent's competency to execute the will and because they initiated the independent quiet title action regarding the pay-on-death/joint tenancy accounts. On April 21, 1993, Campbell and Walters filed a response to motion for termination of inheritance, defending on the ground that an *in terrorem* clause should only be given effect if the beneficiary attacks the validity of the will

without probable cause to do so; that the trial court's findings and conclusions indicate there was probable cause to challenge decedent's testamentary capacity on October 24, 1990; that Terry Campbell was the designated executor of decedent's will dated August 19, 1987, and had an affirmative legal duty to offer the will for probate and support its validity; that Terry Campbell was decedent's conservator and had a duty to protect the pay-on-death/joint tenancy accounts established by decedent prior to the conservatorship; and that the quiet title action was inevitable because the financial institutions refused to release the funds to anyone until ownership was established by court order.

On June 7, 1993, the trial court issued a written decision refusing to enforce the *in terrorem* clause in decedent's October 24, 1990, will. In reaching its decision, the trial court cited *In re Estate of Foster*, 190 Kan. 498, 376 P.2d 784 (1962); *In re Estate of Koch*, 18 Kan. App. 2d 188, 849 P.2d 977, *rev. denied* 253 Kan. 858 (1993); Restatement of Property § 428(k) (1944), and concluded that the challenge to decedent's testamentary capacity was made with probable cause. In reaching this conclusion, the trial court stated in part:

"Since the only evidence in this proceeding must be deduced by this Court from the files and briefs filed herein, this Court finds that in filing the will of 8-19-87 for admission first, Terry and Barbara did nothing wrong. In fact, they were under a legal duty to do so because this Court must presume they had no knowledge of the later executed will of 10-24-90. In opposing the later will of 10-24-90 that was a logical step for them to follow, plus the fact that Ruby was under a voluntary conservatorship at the date of execution of the 10-24-90 will of which Terry was the conservator, and because of her medical condition as stated in Judge Duckworth's findings of 3-29-91, it would appear that the challenge by Terry and Barbara was not done without probable cause."

The district court further concluded that Campbell and Walters had probable cause to initiate the quiet title action regarding the pay-on-death/joint tenancy accounts. With regard to this conclusion, the district court stated in part:

"This Court finds that such action did not violate that part of Paragraph 8 prohibiting interference with the administration of the estate because of the action taken by the banks that were involved. It is very clear to this Court that the banks and savings and loan association had taken the position that they would not honor the termination of the joint tenancy done by

Ruby on 10-24-90, and notified her of such fact prior to her death and maintained the posture after her death that they would not pay out the accounts without a court order.

"It is obvious that when the banks and savings and loan association took that position, a lawsuit would be filed by some claimant. The fact that Terry and Barbara filed the lawsuit should not be held against them. Also, this Court must mention that in this quiet title action, Barbara and Terry did act with probable cause because until the Appellate Court of Kansas published their decision in *Campbell, et al. v. Black, et al.*, 92-68204-A on 1-8-93, there was no express authority that a conservatee could terminate a joint tenancy account unilaterally."

Only two Kansas cases have dealt with the enforceability of an *in terrorem* clause. Both cases are factually distinguishable from the case at bar.

In *In re Estate of Foster*, 190 Kan. 498, a beneficiary of a testamentary trust challenged the will creating the trust on the ground that one of the provisions violated the rule against perpetuities. The district court agreed, struck out the invalid provision, and carried out the will as otherwise written. The will contained an *in terrorem* clause, and the guardian ad litem asked the district court to enforce it against the beneficiary contesting the above referenced provision of the will. The district court refused to enforce the *in terrorem* clause. The Kansas Supreme Court, in affirming the trial court, stated:

"We adopt the rule of the Restatement of Property, section 429, which holds that a bona fide belief in the invalidity of the will and with probable cause prevents the application of an *in terrorem* clause as to a beneficiary under the will. As set out in the Restatement, a beneficiary who attacks a will upon rules based upon public policy is merely serving the public." *In re Estate of Foster*, 190 Kan. at 500.

It should be noted that Restatement of Property § 429 (1944) deals only with challenges to specific provisions of a will based on public policy grounds. The instant case does not involve a challenge on public policy grounds.

In *In re Estate of Koch*, 18 Kan. App. 2d 188, two beneficiaries challenged the validity of an anti-litigation (forfeiture) clause in their mother's will on the grounds that it was against public policy.

The district court held the clause to be valid and enforced it against the contestants. In affirming the trial court, the Kansas Court of Appeals, citing *Foster* stated:

"An *in terrorem* clause is a clause in a will in which a testator imposes upon a devisee or legatee a condition that he or she shall not dispute the provisions of the will or the gift shall be void. Our Supreme Court has determined that *in terrorem* clauses are to be given effect when a beneficiary attacks the validity of the will without probable cause to do so." *In re Estate of Koch,* 18 Kan. App. 2d at 207.

Both *Foster* and *Koch,* while factually distinguishable, stand for the general proposition that an *in terrorem* clause will not be enforced if the person challenging the will, or a provision thereof, does so with probable cause. Justification for this proposition is found in Restatement (Second) of Property § 9.1 (1981):

"An otherwise effective provision in a will or other donative transfer, which is designed to prevent the acquisition or retention of an interest in property in the event there is a contest of the validity of the document transferring the interest or an attack on a particular provision of the document, is valid, unless there was probable cause for making the contest or attack."

We adopt this Restatement rule.

Comment j of Restatement (Second) of Property § 9.1 defines probable cause as "the existence, at the time of the initiation of the proceeding, of evidence which would lead a reasonable person, properly informed and advised, to conclude that there is a substantial likelihood that the contest or attack will be successful."

Applying the above standard to the specific facts of this case, we conclude that the district court did not err in concluding that Campbell and Walters had probable cause to challenge decedent's testamentary capacity and to institute the quiet title action.

Finally, two additional factors supporting the district court's probable cause conclusions should be noted. First, Campbell and Walters had an affirmative statutory duty to offer the August 9, 1987, will for probate and to support its admission to probate. K.S.A. 1993 Supp. 59-618. The existence of a subsequent will dated October 24, 1990, inevitably and unavoidably required the district court to determine which will was valid and admissible after a full and complete hearing of the circumstances surrounding the execution of both wills. Second, the refusal of the financial institutions to release the pay-on-death/joint tenancy accounts to the estate or the other named parties without court order in-

evitably and unavoidably required someone to seek a court determination of title to the accounts.

Affirmed.