(983 P.2d 279)
No. 79,834

IN THE MATTER OF THE ESTATE OF EMERY G. WELLS, JR., Deceased.

Opinion filed July 16, 1999.

*William H. Stowell*, of Phillipsburg, for appellant Eric Wells, Executor.

*Jeffrey D. Wicks* and *Brian C. Wright*, of Turner and Boisseau, Chartered, of Great Bend, for appellee Sharon Wells.

Before KNUDSON, P.J., LEWIS, J., and RICHARD M. SMITH, District Judge, assigned.

SMITH, J.: This is an appeal from the district court's refusal to enforce the *in terrorem* provision of the last will and testament of Emery G. Wells, Jr. We reverse and remand with directions to enforce the provision.

On January 12, 1996, Emery executed his Last Will and Testament. Sharon Wells (from whom Emery was divorced) executed a valid consent, waiving her statutory rights. They remarried later that same day. In April 1996, Emery adopted Sharon's daughter,

Trisha Gerber. On July 2, 1996, Emery executed the "First Codicil of Emery G. Wells, Jr. to Last Will and Testament of Emery G. Wells dated January 12, 1996" (First Codicil). This codicil left Sharon additional vehicles and real estate, and added Sharon to the residuary legatees. The First Codicil contained the following provision: "As modified by the foregoing provisions in this my FIRST CODICIL . . . I confirm and republish my LAST WILL AND TESTAMENT DATED JANUARY 12, 1996 in all respects except as the same is modified by this my FIRST CODICIL thereto." This codicil met with all of the necessary testamentary formalities, and again Sharon executed a consent, waiving her statutory rights as a surviving spouse.

On July 16, 1996, Emery executed the "Second Codicil to Last Will and Testament of Emery G. Wells, Jr. dated January 12, 1996" (Second Codicil). The Second Codicil was executed to correct typographical errors and was essentially identical to the First Codicil in all material respects. It too contained a clause confirming and republishing the "Last Will and Testament dated January 12, 1996." Still again, Sharon executed a consent waiving her statutory rights as a surviving spouse.

Emery died 2 days after execution of the Second Codicil. A petition was filed to admit to probate Emery's will of January 12, 1996, as amended by the Second Codicil of July 16, 1996. Pursuant to the will, Emery's son Eric was proposed as executor. The petition also requested the court to determine Sharon's consents to be valid. Sharon filed a voluntary entry of appearance and waiver of notice. On September 3, 1996, an order was entered by the district magistrate judge admitting the will to probate, appointing Eric as executor, and determining the consents to be valid.

On October 23, 1996, in apparent response to a motion pertaining to Wells' testamentary trust, Sharon, through her attorney, filed an "answer," asserting the invalidity of Emery's Last Will and Testament of January 12, 1996. She alleged their subsequent marriage and Emery's adoption of her daughter revoked the will, pursuant to K.S.A. 59-610, and that Emery died intestate. K.S.A. 59-610 provides, in pertinent part: "If after making a will the testator mar-

ries and has a child, by birth or adoption, the will is thereby revoked." She requested a denial of the will to probate.

A hearing was held before the district magistrate judge on the same day her "answer" was filed. No evidence was offered. Sharon's attorney, with her present, argued Emery's will was void by operation of law and that it should not be admitted to probate. Eric argued Emery had republished his will subsequent to remarriage and adoption by his codicils. Eric pointed out the will had been admitted to probate and that Sharon had not objected. He also argued Sharon had consented to the will and both codicils.

By journal entry, the district magistrate judge found the purpose of Sharon's "answer" was to "contest the actual admission of the will to probate, to completely set aside the probated will, including its codicil . . . and handle this matter as an intestate estate." The court found that Emery's codicils republished his will; therefore, K.S.A. 59-610 did not apply. The magistrate further noted the court had admitted the will to probate on September 3, 1996, and no appeal had been taken, thereby making the order final.

On March 12, 1997, Eric filed a petition for assignment of estate assets. He alleged the *in terrorem* clause of Emery's will barred Sharon from taking under the will. This clause provided, in pertinent part:

"If any legatee, devisee or beneficiary hereunder directly or indirectly, contests this will or attempts in any manner to prevent its probate or to set it aside or to alter any of the provisions . . . then, in any such event, I hereby revoke all legacies, bequests, and devises, and trust provisions in favor of such legatee, devisee or beneficiary, and direct that the share that such legatee, devisee or beneficiary would otherwise receive hereunder shall become part of my residuary estate and be disposed of in accordance with the ARTICLES of my will dealing with the disposition of my residuary estate, but with such legatee, devisee or beneficiary having no right to participate therein and to be excluded from any interest in my residuary estate."

Sharon, through new counsel, filed written defenses, asserting the prior action was taken without her approval or understanding. The matter was assigned to a district judge before whom she argued she had probable cause to pursue a challenge to the will. The district court determined that Sharon had probable cause to con-

test the will and refused to invoke the *in terrorem* clause. Eric appeals this determination.

The enforcement of *in terrorem* clauses has been considered in at least three reported Kansas cases. In *In re Estate of Foster*, 190 Kan. 498, 500, 376 P.2d 784 (1962), the Supreme Court adopted the rule of the Restatement of Property § 429 (1944), which held that when a contestant acts with probable cause on a belief a will is invalid, application of an *in terrorem* clause in the will is prevented. In *In re Estate of Koch*, 18 Kan. App. 2d 188, 207, 849 P.2d 977, *rev. denied* 253 Kan. 858 (1993), an *in terrorem* clause was defined as "a clause in a will in which a testator imposes upon a devisee or legatee a condition that he or she shall not dispute the provisions of the will or the gift shall be void." The probable cause rule was reiterated without further elucidation.

The probable cause standard for determining whether to invoke an *in terrorem* sanction was analyzed in *In re Estate of Campbell*, 19 Kan. App. 2d 795, 801, 876 P.2d 212 (1994). In *Campbell*, this court adopted the definition of probable cause stated in comment j of the Restatement (Second) of Property § 9.1 (1983). Probable cause was defined as " 'the existence, at the time of the initiation of the proceeding, of evidence which would lead a reasonable person, properly informed and advised, to conclude that there is a substantial likelihood that the contest or attack will be successful.' " *Campbell*, 19 Kan. App. 2d at 801. This standard is to be applied to the specific facts on a case-by-case basis.

Appellate review of this determination is a mixed question of fact and law. Determination of probable cause is normally a question of fact. But where the record reflects no factual dispute, the determination of probable cause is a question of law over which this court has unlimited review. *Knight v. Cordry*, 22 Kan. App. 2d 9, 12, 913 P.2d 1206, *rev. denied* 258 Kan. 858 (1995) (probable cause determination for malicious prosecution). Here, there are no disputed material facts. Review of whether Sharon had probable cause to pursue her attack on Emery's will is plenary.

Emery's will was admitted to probate on September 3, 1996. The district court found Sharon had validly consented to the will and the Second Codicil. Sharon signed and filed a voluntary entry

of appearance and waiver of notice, establishing she knew of the petition and did not oppose it. No appeal was taken from the order admitting the will to probate or determining the validity of the consents, as provided for in K.S.A. 59-2401(a)(1) and (21). Pursuant to K.S.A. 59-2213, the probate code provides the court shall have continuing control over its own orders, judgments, and decrees for 30 days. Thereafter, vacating or modifying such judgments is controlled by K.S.A. 60-260(b). When Sharon filed her "answer" 50 days after the court's order, K.S.A. 60-260(b) represented her only avenue for relief in the district court.

There is no suggestion in the record that any of the grounds for relief under K.S.A. 60-260(b) were present. Sharon's argument was that the will was void under K.S.A. 59-610. This is a distinctly separate concept from the judgment being void under K.S.A. 60-260(b)(4). A void judgment is one rendered by a court which lacked personal or subject matter jurisdiction or acted in a manner inconsistent with due process. *Producers Equip. Sales, Inc. v. Thomason*, 15 Kan. App. 2d 393, Syl. ¶ 2, 808 P.2d 881 (1991).

Sharon's attack on Emery's will, asserting it was void under K.S.A. 59-610 and presented by an "answer" filed almost 50 days after the admission of the will to probate, was destined to fail on a procedural basis. We now turn to its substance.

Kansas has long recognized the right of a testator to revive a prior will despite previous explicit revocation. See *Derr v. Derr*, 123 Kan. 681, Syl. ¶ 2, 256 Pac. 800 (1927). Should a reasonable person, properly informed or advised, conclude a testator cannot revive a will after statutory revocation as provided in K.S.A. 59-610?

Admittedly, there are no Kansas cases directly addressing whether republication by a subsequent codicil revives a will after statutory revocation, pursuant to K.S.A. 59-610. But the "substantial likelihood of success" analysis should not end there. There appear to be no decisions from any jurisdiction which suggest a prohibition of such a revival. The author of Annot., 33 A.L.R.2d 922, 924 states:

"It is clear that a revoked will or codicil which is in existence can be revived by a subsequent codicil, executed with the formalities required by the particular

jurisdiction, *and no case has been found categorically holding that this cannot be accomplished.* . . .

"Whether or not a given will or codicil which has been revoked is revived by a subsequent codicil most frequently resolves itself into a question as to the intention of the testator, or identification of the instrument to which the codicil purports to be a codicil." (Emphasis added.)

While there appears to be no authority to the contrary, there are ample authorities supporting such a revival. See *Matter of Estate of Ivancovich*, 151 Ariz. 442, 444, 728 P.2d 661 (1986); *Estate of Riddel*, 104 Cal. App. 2d 162, 164, 230 P.2d 863 (1951); *White v. Conference Claimants Endowment Com'n, Etc.*, 81 Idaho 17, 28, 336 P.2d 674 (1959); 79 Am. Jur. 2d, Wills § 685, p. 769; 2 Page, Law of Wills §§ 21.86-21.88, 23.15 (1960).

A will revoked pursuant to K.S.A. 59-610 by marriage and subsequent birth or adoption of a child may be revived by republication through a codicil or other instrument which meets the necessary testamentary formalities. The substance of Sharon's attack was contrary to this universally recognized principle of probate law.

There is no question regarding Emery's intent. The revived will is clearly identified. There is no question regarding execution of the instruments, the party's capacity, or any other matter which would affect the validity of the will, the codicils, or the consents thereto.

On appeal, Sharon attempts to suggest that her actions did not constitute an attack on Emery's will and that the action was taken by her attorney without her understanding and agreement. None of these assertions are supported by the record.

Sharon's attack on Emery's will lacked a procedural foundation upon which to advance. Its substance lacked authority and sound legal reasoning. Sharon attacked a will that she had consented to three times. Two of these consents were executed after the events she alleged invalidated the testator's intent. Her attack was destined to fail procedurally, substantively, and factually. There was no substantial likelihood of success; therefore, the contest clearly lacked probable cause. The district court erred in not enforcing the *in terrorem* clause.

The case is remanded to the district court with directions to enforce the *in terrorem* clause against Sharon.