No. 102,744

LAWRENCE HAMEL, *Appellant/Cross-appellee,* v. DENNIS HAMEL and LEONA NEWELL, Co-Trustees of the ARTHUR HAMEL LIVING TRUST, *Appellees/Cross-appellants.*

(299 P.3d 278)

Opinion filed April 5, 2013.

*Norman R. Kelly*, of Norton, Wasserman, Jones & Kelly, L.L.C., of Salina, argued the cause, and *Robert A. Martin*, of the same firm, and *Ronald S. Shalz*, of Law Office of Ronald S. Shalz, of Colby, were with him on the briefs for appellant/cross-appellee.

*Carol M. Park*, of Glassman, Bird, Braun & Schwartz, L.L.P., of Hays, argued the cause, and *John T. Bird*, of the same firm, was with her on the brief for appellees/cross-appellants.

The opinion of the court was delivered by

MORITZ, J.: This appeal arises from a dispute over the administration of a trust between a beneficiary of the trust, Lawrence Hamel (Lawrence), and the trustees of that trust, Dennis Hamel (Dennis) and Leona Newell (collectively Trustees).

Lawrence sought termination of his deceased father's trust, the Arthur L. Hamel Living Trust, dated February 7, 2003, and the First Amendment to the Arthur L. Hamel Living Trust, dated February 17, 2003, (collectively Trust) and immediate distribution of Trust assets based on the Trustees' alleged failure to properly administer the Trust. Lawrence later moved to set aside a contract for deed executed between Dennis and his wife, as buyers, and the Trustees, as sellers, for the sale of farmland owned by the Trust. Lawrence also sought to remove the Trustees, alleging they engaged in self-dealing and breached their fiduciary duties.

Lawrence appeals from the district court's conclusions that (1) Arthur did not intend the Trust to terminate immediately upon his death; (2) the Trust permitted the Trustees to finance the sale of the farmland to Dennis under the terms set forth in the contract for deed; (3) Lawrence violated the Trust's no-contest clause by challenging, without probable cause, the Trustees' sale of the farmland to Dennis; (4) Lawrence's violation of the no-contest clause required his disinheritance; and (5) Lawrence was not entitled to attorney fees and costs under K.S.A. 58a-1004.

The Trustees cross-appeal from the district court's determination of the effective date of Lawrence's disinheritance and from the court's conclusion that they acted in bad faith by failing to provide Lawrence with an adequate accounting before being ordered to do so by the court.

We hold the district court reasonably interpreted ambiguous Trust provisions as not requiring the Trust's immediate termination upon Arthur's death. However, we conclude the Trustees lacked authority to sell the farm to Dennis under a contract for deed that exceeded the 3-year period expressly provided by the Trust. But for reasons discussed herein, we decline to set aside the sale. Instead, because the Trustees' execution of the contract for deed violated the terms of the Trust, we hold that Lawrence had probable cause to challenge the Trustees' sale of the farm to Dennis under the terms set forth in that contract. Thus, we reverse both the district court's ruling regarding the Trustees' authority to finance the sale of the farm as well as its enforcement of the no-contest clause against Lawrence. We remand to the district court for further proceedings necessary, if any, to effectuate our rulings and for consideration of Lawrence's claim for attorney fees and costs.

Additionally, while the Trustees cross-appealed the district court's determination as to the date of Lawrence's disinheritance, our reversal of the district court's enforcement of the no-contest clause renders that issue moot. Finally, in light of Lawrence's abandonment of any issue regarding the district court's denial of his motion to remove the Trustees, the Trustees' challenge to the dis-

trict court's conclusion that the Trustees breached their duty to provide an accounting also is moot.

### FACTUAL AND PROCEDURAL BACKGROUND

In 2003, Arthur established a revocable living trust naming himself and his son Dennis as Trustees. Arthur named as beneficiaries all of his surviving children (Dennis, Lawrence, Leona Newell, Elaine Befort, and Linda Leiker) and the children of Arthur's deceased son (Lisa Riebel and John Hamel). Arthur included a no-contest clause in the Trust itemizing several actions that, if taken by a beneficiary, could result in that beneficiary's disinheritance.

After preparation of the Trust documents, Arthur, Elaine, Lawrence, Dennis, Leona, and Linda met with an attorney to discuss the terms of the Trust. Arthur asked each of the siblings if they had any interest in buying the family farm. After Dennis expressed an interest, the family decided Arthur would give Dennis a first option to buy the farm. The family also discussed naming an additional person to serve as a trustee after Arthur's death.

A few days after the meeting, Arthur amended the Trust to name Dennis and Leona as Trustees upon Arthur's death. Additionally, Arthur amended Article Eight, Section One of the Trust, to include an option for Dennis to purchase the farm:

"It is my intention that my son, DENNIS HAMEL, have the first option to purchase any or all of the farmland (including cultivated and pasture) owned by my trust and/or by me individually. Upon my death, my Trustees shall have the farmland appraised. Based upon that appraisal, DENNIS HAMEL has the option to purchase any or all of the farmland for three years immediately following my death at the appraised price. During such time period, the trust shall continue to hold the farmland not yet purchased by DENNIS HAMEL. All net income from the farmland shall be distributed annually to the beneficiaries in accordance with the above listed beneficiary's fractional share of the trust. If DENNIS HAMEL has not purchased the farmland within the allotted time period, then it shall be divided in accordance with the above beneficiary's fractional shares."

Arthur died on June 14, 2004. Thereafter, Elaine, Lawrence, Dennis, and Leona met on several occasions to discuss funeral arrangements, the sale of Arthur's personal property, and administration of the Trust. Lawrence obtained a copy of the Trust in July 2004. In August 2004, Elaine, Lawrence, Dennis, and Leona

met to discuss the third-party appraisal of the farmland and Dennis' intent to purchase the farm on a 6-year contract at 5 percent interest. At the meeting, Lawrence did not object to the method or terms of Dennis' purchase, but Lawrence later told his children he did not like the concept of Dennis buying the farm on contract.

In October 2004, Dennis executed a contract for deed between himself and his wife, as buyers, and the Trustees, as sellers, to purchase the farmland for $244,000 to be paid over 6 years with 5 percent interest and a down payment of $10,000. Over the next several months, the beneficiaries, including Lawrence, received distributions based in part on Trust income from Dennis' purchase of the farm.

In May 2005, Lawrence hired attorney Joseph Jeter to assist in acquiring information from the Trustees "regarding certain financial matters." Jeter advised Lawrence that under the Trust's provisions, Lawrence could request copies of the third-party appraisals of farmland and farm equipment purchased by Dennis, an inventory of Trust assets, and an accounting, including all receipts and disbursements from the Trust. Jeter explained that Lawrence's request would not violate the Trust's no-contest clause because the Uniform Trust Code of Kansas entitled Lawrence to this information.

Between May 2005 and March 2006, Jeter corresponded with the Trustees' attorneys, requesting specific information about Trust activity, including bank statements, canceled checks, and copies of deeds related to Trust assets. In this correspondence, Jeter made at least three requests for an accounting or a trust report pursuant to K.S.A. 2012 Supp. 58a-813. In response, the Trustees provided an inventory and appraisement, bank statements, canceled checks, printouts of Trust account activity, a list of Trust assets including the value of the assets, copies of appraisals, and a copy of the contract for deed for the sale of the farm.

In May 2006, Jeter filed a petition in district court seeking a formal accounting, termination of the Trust and immediate distribution of Trust assets, and attorney fees; asking the court to compel the Trustees to perform their duties; and alleging Dennis breached

his duty of loyalty by purchasing and selling Trust property without notice to Lawrence.

Several months later, Jeter withdrew as Lawrence's counsel, and Lawrence retained the services of attorney Leslie Hess. After meeting with Jeter, Hess agreed with Jeter's assessment that the Trustees had failed to provide an adequate accounting. In letters to the Trustees' attorneys, Hess questioned whether Dennis' purchase of the farm had generated Lawrence's distribution checks, and Hess suggested that Dennis "should obtain a loan and pay the purchase price in full rather than over a period of years." Hess also asked the Trustees' attorneys to identify and provide a copy of any Trust provisions or statutory authority permitting Dennis to purchase the farm on contract.

In January and February 2007, Hess corresponded with the Trustees' attorney and again sought a copy of the contract for deed, other information about Trust activity, and identification of the provisions of the Trust authorizing the Trustees to sell the farm on contract. Hess specifically inquired: "How do you believe the Trustees have the authority to enter into a contact [sic] which is in violation of the trust provisions?" In response, the Trustees' attorney provided the requested information and directed Hess to specific sections of the Trust providing the Trustees with the same authority as an absolute owner regarding the sale of real estate owned by the Trust.

Hess filed a "Motion to Set Aside Contract for Deed," on March 12, 2007, alleging the contract for deed violated the Trust by allowing Dennis to purchase the farm over 6 years instead of the 3 years expressly permitted by the Trust. The motion further contended the Trust did not authorize either the financing of the sale of the real estate or the 5 percent interest rate. Hess sought an order setting aside the contract and requesting the farm property revert back to the Trust beneficiaries unless Dennis paid the full contract price on or before June 14, 2007, and paid to the Trust the income derived from the real estate "until the entire purchase price is paid in full."

On March 26, 2007, the district court ordered the Trustees to file a formal accounting within 30 days. The Trust's accountant

prepared formal accountings for the years 2004, 2005, and 2006. After the Trustees timely filed the formal accountings in the district court and provided copies to the Trust beneficiaries, Lawrence objected to the accountings. Hess also sought to remove the Trustees, alleging several instances of self-dealing by the Trustees, particularly Dennis, and alleging the Trustees had breached their fiduciary duties.

## The District Court's Decisions

In a July 2007 memorandum decision, the district court determined the Trustees had authority to sell the farm to Dennis under the terms of the contract for deed. In support of its conclusion, the court cited specific Trust provisions giving the Trustees the powers of an individual with "absolute ownership and control· of property" and the power "to lend money to . . . any beneficiary under [the] Trust . . . as may be agreed upon between my Trustee and such parties, provided, however, that any such loan shall be adequately secured and shall bear a reasonable rate of interest."

The district court further found that although the Trust contained ambiguous provisions regarding when Arthur intended the Trust to terminate, Arthur did not intend for the Trust to terminate immediately upon his death.

The court subsequently appointed a Master to consider the adequacy of accountings provided by the Trustees. The Master's report concluded the Trustees had a duty to provide an accounting upon a request by a beneficiary and the Trustees failed to do so until required by the court. The Master's report further determined the court-ordered accountings were inadequate only because they failed to adhere to the promptness and reasonableness requirements of the Trust and the Uniform Trust Code of Kansas.

In February 2009, the district court conducted an evidentiary hearing on two issues: (1) removal of the Trustees, and (2) enforcement of the no-contest clause. Further, Lawrence's counsel asked the court to consider Lawrence's entitlement to attorney fees.

In a May 2009 memorandum decision, the district court concluded the Trustees breached their duty to provide an accounting but found no evidence to support the remaining allegations of mis-

conduct on the part of the Trustees. Further, the district court held Lawrence lacked standing to seek the Trustees' removal because he lost his status as a "qualified beneficiary" when he violated the Trust's no-contest clause.

The district court concluded Lawrence's challenge to the Trustees' authority to sell the farm to Dennis on contract breached the Trust's no-contest clause. Additionally, the court determined Lawrence lacked probable cause to challenge the Trustees' sale of the farm, and thus he forfeited any benefits he received under the Trust as of the date he filed his motion to set aside the contract for deed. Finally, the court assessed costs against Lawrence.

Both parties timely appealed to the Court of Appeals, and this court transferred the case upon Lawrence's motion. See K.S.A. 20-3017; Supreme Court Rule 8.02 (2012 Kan. Ct. R. Annot. 71).

On appeal, Lawrence asserts the district court erroneously concluded (1) the Trust did not terminate immediately upon Arthur's death; (2) the Trustees had authority to sell the farm to Dennis under the terms of the contract for deed; (3) Lawrence's actions in challenging the Trust violated the no-contest clause; (4) Lawrence lacked probable cause to challenge the Trustees' sale of the farm to Dennis; and (5) Lawrence's violation of the no-contest clause required forfeiture of his benefits.

The Trustees cross-appeal from both the district court's determination as to the date of Lawrence's disinheritance and its conclusion that the Trustees breached their duty to provide an accounting.

### TERMINATION OF THE TRUST

Lawrence first contends the district court erroneously concluded that Arthur did not intend for the Trust to terminate immediately upon Arthur's death. Lawrence reasons that Arthur intended the Trust to terminate immediately upon his death and therefore the sale of the farm to Dennis violated the Trust. In support, Lawrence points to Trust language which he claims reflects Arthur's intent that the Trust terminate upon Arthur's death. The Trustees contend the district court's contrary interpretation is reasonable and supported by the Trust's provisions.

When a court is called upon to interpret a trust, the court's primary function is to ascertain the intent of the settlor by reading the trust in its entirety. If the settlor's intent can be ascertained from the express terms of the trust, the court must give effect to those terms unless they are contrary to law or public policy. See *In re Estate of Haneberg*, 270 Kan. 365, 371, 14 P.3d 1088 (2000); *In re Estate of Berryman*, 226 Kan. 116, 118-19, 595 P.2d 1120 (1979); *In re Estate of Oswald*, 45 Kan. App. 2d 106, 112, 244 P.3d 698 (2010), *rev. denied* 292 Kan. 965 (2011); see also K.S.A. 58a-112 (providing that the same rules of construction apply to interpretation of wills and trusts); Restatement (Third) of Property: Donative Transfers § 10.1 (2001) ("The controlling consideration in determining the meaning of a donative document is the donor's intention. The donor's intention is given effect to the maximum extent allowed by law.").

The interpretation and legal effect of a written instrument is a matter of law over which we exercise unlimited review. *National Bank of Andover v. Kansas Bankers Surety Co.*, 290 Kan. 247, 263, 225 P.3d 707 (2010); see *Shamberg, Johnson & Bergman, Chtd. v. Oliver*, 289 Kan. 891, 900, 220 P.3d 333 (2009) ("Regardless of the district court's construction of a written contract, an appellate court may construe a written contract and determine its legal effect.").

Generally, "a trust terminates to the extent the trust is revoked or expires pursuant to its terms, no purpose of the trust remains to be achieved, or the purposes of the trust have become unlawful, contrary to public policy, or impossible to achieve." K.S.A. 58a-410(a); see *In re Estate of Somers*, 277 Kan. 761, 768, 89 P.3d 898 (2004) (beneficiaries cannot compel termination of a trust " '[i]f the continuance of the trust is necessary to carry out a material purpose of the trust' "); *Oswald*, 45 Kan. App. 2d at 112 (concluding language of trust was sufficient to establish settlor's intent for trust to terminate immediately or within a reasonable time after her death where, *inter alia*, expressed primary purpose of trust was to provide for settlor's needs during her lifetime).

Here, in concluding Arthur did not intend for the Trust to terminate immediately upon his death, the district court noted some

ambiguity between various Trust provisions, particularly Articles Five through Eight.

Article Five of the Trust provides for payments of certain debts and taxes upon Arthur's death but does not expressly call for the Trust's termination. Article Six directs the distribution of a $1,000 gift to a designated beneficiary "[u]pon [Arthur's] death" but states that "[e]xcept for the specific distributions directed" in Article Six, "all distributions of trust property shall be made in accordance with the Articles that follow." Similarly, Article Seven prohibits the Trustees from creating a "Common Pot Trust" after Arthur's death, instead requiring that "[a]ll of [the] Trust Estate that has not been distributed under prior provisions . . . shall be held, administered, divided and distributed according to the provisions of the Articles that follow."

The primary article governing division and distribution of Trust property, Article Eight, contains conflicting provisions regarding termination. Article Eight, Section One expressly directs the Trustee to "divide, into separate shares, all of my Trust Estate not previously distributed under the preceding Articles of my Trust Agreement . . . as follows . . . ." It then identifies each named beneficiary and his or her proportionate share, but does not indicate when such division is to occur. The next paragraph in Article Eight, Section One expressly provides that Dennis

"has the option to purchase any or all of the farmland for three years immediately following my death at the appraised price. During such time period, the trust shall continue to hold the farmland not yet purchased by DENNIS HAMEL. All net income from the farmland shall be distributed annually to the beneficiaries in accordance with the above listed beneficiary's fractional share of the trust. If DENNIS HAMEL has not purchased the farmland within the allotted time period, then it shall be divided in accordance with the above beneficiary's fractional shares."

Immediately following this provision, Article Eight, Section One, subsections (a) through (g) provide that "[t]he trust share set aside for [named beneficiary] shall be held, administered and distributed as follows" and directs the Trustee to *immediately* pay to, or apply for the benefit of, such beneficiary, all net income from such beneficiary's trust share, free of trust" and to *immediately* pay to, or

apply for the benefit of, such beneficiary, all principal from such beneficiary's trust share, free of trust." (Emphasis added.)

Faced with the conflicting provisions of Article Eight, the district court reasoned that in light of Arthur's express requirement that the Trust "shall continue to hold the farmland" during the 3-year period in which Dennis could purchase the farmland, Arthur did not intend the Trust to terminate immediately upon his death. Implicitly, the district court determined that a material purpose of the Trust was to hold the farmland for 3 years following Arthur's death to permit Dennis an opportunity either to exercise his option to purchase the farmland or until that option expired.

Under these circumstances, we conclude the district court fairly interpreted the ambiguous Trust provisions to conclude Arthur did not intend the Trust to terminate immediately upon his death. Consequently, we reject Lawrence's argument that the sale of the farm to Dennis was void based on that intent.

## TRUSTEES' AUTHORITY TO SELL FARM UNDER TERMS OF CONTRACT FOR DEED

Lawrence next argues the district court erroneously concluded the Trustees had authority to finance the sale of the farm to Dennis under the terms of the contract for deed. Specifically, Lawrence argues the Trust's terms did not permit Dennis to (1) purchase the farm over 6 years instead of 3 years, (2) pay an interest rate of 5 percent with no interest required during the last year, (3) finance the sale of the farm through the Trust, (4) make a down payment of only $10,000, or (5) receive all income and profit from the land for the term of the contract. The Trustees contend various powers granted to them under the Trust authorized the sale of the farm to Dennis under the terms of the contract for deed.

In determining the Trustees had authority to sell the farm to Dennis under the terms of the contract for deed, the district court cited the Trust's provisions granting the Trustees " 'the power to do all acts that might legally be done by an individual in absolute ownership and control of property,' " and providing the Trustees with " 'the power to lend money to . . . any beneficiary under [the] Trust . . . as may be agreed upon between my Trustee and such

parties, provided, however, that any such loan shall be adequately secured and shall bear a reasonable rate of interest.' "

At first blush, the district court's ruling on this issue appears consistent with the terms of the Trust. Article Eleven, Section One grants to the Trustees "any power my Trustee needs to administer my Trust Estate, which is not hereinafter listed." This paragraph also provides that Trustees with "the power respecting property in [the] Trust Estate that an absolute owner of such property would have." In addition to these broad powers, Article Eleven vests in the Trustees several specific powers.

Article Eleven, Section One, subsection "aa" provides: "Except as otherwise provided in my Trust Agreement, my Trustee shall have the power to do all acts that might legally be done by an individual in absolute ownership and control of property." Subsection "gg" gives the Trustees "the power to lend money . . . to any beneficiary under [the] Trust . . . as may be agreed upon between my Trustee and such parties, provided, however, that any such loan shall be adequately secured and shall bear a reasonable rate of interest."

While we agree that the Trust contains several general provisions broadly authorizing the Trustees to control and administer Trust property, including the power to lend money to beneficiaries, we cannot agree that those provisions authorized the Trustees to finance the sale of the farm to Dennis over a period exceeding the 3 years anticipated by the more specific provision of the Trust that relates to the sale of the farm.

In amending the Trust, Arthur gave Dennis the first option to buy any or all of the farmland owned by the Trust and specifically directed:

"Upon my death, my Trustees shall have the farmland appraised. Based upon that appraisal, DENNIS HAMEL has the option to purchase any or all of the farmland *for three years immediately following my death at the appraised price*. During such time period, the trust shall continue to hold the farmland not yet purchased by DENNIS HAMEL. All net income from the farmland shall be distributed annually to the beneficiaries in accordance with the above listed beneficiary's fractional share of the trust. If DENNIS HAMEL *has not purchased the farmland within the allotted time period, then it shall be divided in accordance with the above beneficiary's fractional shares*." (Emphasis added.)

The Trustees argue that while Arthur provided Dennis with an "option to purchase" the farmland for the 3-year period following Arthur's death, Arthur did not require that the purchase be completed in 3 years—only that the option be exercised. But this narrow interpretation ignores the remainder of the clause which provides for division of the farmland in accordance with the beneficiaries' fractional shares if Dennis has not *"purchased* the farmland *within the allotted time."*

The language of the Trust conveys Arthur's clear intent that the farmland would be disposed of within 3 years of his death—either through Dennis' purchase of the farm or by a division of the farm property among the beneficiaries. The Trustees frustrated that intent when they entered into a contract for deed with Dennis to pay the purchase price over a 6-year period with title passing at the end of that period. See Restatement (Third) of Property: Donative Transfers § 3.4(a), comment a (1998) (explaining that in contract for deed purchaser acquires equitable title and immediate possession of real estate but legal title is not conveyed until final payment is made). Under the terms of the contract for deed at issue here, the purchase of the farmland would not be final, if at all, for more than 6 years after Arthur's death. Further, if for some reason Dennis' purchase of the farm fell through beyond the 3-year period but before the end of the 6-year contract period, the property would not have been divided among the beneficiaries within 3 years in contravention of Arthur's intent.

The dissent takes issue with our conclusion that the language of the trust conveys Arthur's intent that the beneficiaries receive a final payout within 3 years and points out that "there is nothing in the quoted language that says anything about a final payout within 3 years." Further, the dissent suggests our conclusion regarding Arthur's intent "misconstrues the nature of a contract for deed."

We agree that the language of the Trust does not specifically indicate that the Trust is to terminate in 3 years with a final payout. But the paragraph of the Trust at issue here does specify a 3-year period related to the disposition of the farmland in three different places: (1) in identifying the period in which Dennis may exercise his option to purchase; (2) in identifying the period during which

the Trust shall "continue to hold the farmland not yet purchased" and pay net income to the beneficiaries; and (3) in specifying that if Dennis has not "purchased the farmland within the allotted time period," the farmland shall be divided in accordance with the beneficiaries' fractional shares.

To suggest that the 3-year period pertains only to time in which Dennis has to exercise his option to purchase ignores the last provision, which reflects Arthur's intent that the title to the farmland be transferred within 3 years or the farmland be divided among the beneficiaries. Moreover, our interpretation does not misconstrue the nature of a contract for deed, but instead acknowledges its inconsistency with Arthur's intent as expressed in the Trust. Namely, the contract for deed itself anticipated that if Dennis defaulted on the contract, the Trustees could "declare the contract null and void," and legal title to the farmland would remain with the Trust while equitable title would revert back to the Trust. Thus, if Dennis breached the contract after more than 3 years had passed, the farmland would neither have been purchased nor divided among the beneficiaries within the 3-year period—frustrating Arthur's intent regarding the disposition of the farmland within 3 years of his death.

Finally, we do not hold today, as the dissent suggests, that the language of the Trust prohibits the Trustees from entering into a contract for deed with one of the Trustees. Instead, we find that the *6-year* contract for deed entered into in this case frustrates Arthur's intent that the farmland be disposed of within 3 years.

Because the terms of the contract for deed violated the express provisions of the Trust requiring purchase or division of the farmland within 3 years, we conclude the Trustees were not authorized to sell the farm to Dennis under the terms set forth in the contract for deed, and we reverse the district court's ruling on this issue.

Further, while Lawrence claims the Trustees lacked authority to enter into the contract for deed for other additional reasons, including that the Trustees lacked authority to finance the sale of the real estate or to agree to a 5 percent interest rate, in light of our reversal of the district court's ruling, we decline to address those remaining assertions.

*Remedy for reversal of district court's ruling on motion to set aside contract*

Although Lawrence characterized his trial court motion as a "Motion to Set Aside Contract for Deed," he does not seek this remedy on appeal. Instead, he insisted at the district court level, and maintains on appeal, that in filing this motion he sought only an interpretation of the Trust. Although Lawrence's brief is not entirely clear as to the remedy he seeks, it appears he contends the district court's interpretation error is relevant to our consideration of the overarching issue of whether the court erred in enforcing the no-contest clause. We agree.

Although the district court rejected Lawrence's characterization of his motion to set aside the contract for deed, we note that Lawrence's motion sought to have the farm property revert back to the Trust beneficiaries, or alternatively, to have "Buyers pay said contract price in full on or before June 14, 2007 [or 3 years after the date of Arthur's death]." Significantly, the appellate record establishes that Dennis did, in fact, pay the contract price in full on June 8, 2007, approximately 6 days before the expiration of the 3-year period for finalizing the Trust.

Thus, while our conclusion that the Trustees lacked authority to sell the farm under the terms of the contract for deed does not require that we set aside that contract as void *ab initio*, it provides a predicate to our analysis of the district court's decision to enforce the no-contest clause against Lawrence, as more fully discussed below.

## ENFORCEMENT OF NO-CONTEST CLAUSE

Lawrence challenges the district court's enforcement of the Trust's no-contest, or *in terrorem*, clause, primarily arguing the district court's ruling is contrary to public policy. The Trustees contend the court's enforcement of the no-contest clause is consistent with Kansas law and public policy because Lawrence lacked probable cause to challenge the sale of the farm.

"An *in terrorem* clause is a clause in a will in which a testator imposes upon a devisee or legatee a condition that he or she shall not dispute the provisions of the will or the gift shall be void." *In*

*re Estate of Koch*, 18 Kan. App. 2d 188, 207, 849 P.2d 977, *rev. denied* 253 Kan. 858 (1993); see Restatement (Third) of Property: Donative Transfers § 8.5, comment a (2001) ("A no-contest [or *in terrorem*] clause typically provides for the rescission of any benefit to a devisee, beneficiary, or donee who challenges the validity of the [donative] document, or of a term of the document.").

Our appellate courts have consistently held that *in terrorem* clauses in wills are valid and enforceable against a beneficiary who attacks the validity of the will, or provisions therein, unless the beneficiary had probable cause to challenge the will or its provisions. See *Meyer, Executor v. Benelli*, 197 Kan. 98, 101, 415 P.2d 415 (1966); *In re Estate of Foster*, 190 Kan. 498, 500, 376 P.2d 784 (1962); *Wright v. Cummings*, 108 Kan. 667, 668-72, 196 P. 246 (1921); *In re Estate of Wells*, 26 Kan. App. 2d 282, 285, 983 P.2d 279 (1999); *In re Estate of Campbell*, 19 Kan. App. 2d 795, 801, 876 P.2d 212 (1994); *Koch*, 18 Kan. App. 2d at 207.

A no-contest clause in a trust serves the same purpose as such a clause in a will and is construed according to the same rules applied to wills. See K.S.A. 58a-112 (providing the same rules of construction apply to interpretation of wills and trusts); Restatement (Second) of Property: Donative Transfers § 9.1, comment l (1981) ("No-contest clauses and clauses restraining attacks on particular provisions in [revocable inter vivos trusts] serve the same purpose as do such clauses in wills, and there is no justifiable reason for applying a different test to determine the validity of those clauses in the two comparable situations.").

Courts apply a two-part analysis to determine whether a no-contest clause should be enforced against a beneficiary. First, the court must determine whether the beneficiary's action or actions violated the express terms of the no-contest clause. See *Meyer, Executor*, 197 Kan. at 101 (concluding *in terrorem* clause in a will did not apply where alleged contestant "was simply seeking an interpretation of the provisions of the will under which both parties claimed title"); *Wright*, 108 Kan. at 671-72 (determining defendant's act of filing claim against estate did not amount to contest of validity of will and therefore did not trigger forfeiture clause); see also Annot., 3 A.L.R.5th 590, § 2, pp. 611-12 (holding that in con-

sidering application of forfeiture clause, court must determine whether testator intended for conduct in question to forfeit beneficiary's interest under the will).

Second, the court must determine whether the beneficiary had probable cause to take the action or actions that violated the no-contest clause. See *Foster*, 190 Kan. at 500 (adopting the rule of the Restatement of Property, § 429 [1944], holding "that a bona fide belief in the invalidity of the will" and probable cause prevents application of *in terrorem* clause as to beneficiary under the will, and finding *in terrorem* clause unenforceable when beneficiary successfully challenged will provision violating rule against perpetuities); see also *Campbell*, 19 Kan. App. 2d at 801 (concluding "an *in terrorem* clause will not be enforced if the person challenging the will, or a provision thereof, does so with probable cause"); *Koch*, 18 Kan. App. 2d at 207 (determining "that *in terrorem* clauses are to be given effect when a beneficiary attacks the validity of the will without probable cause to do so"); Restatement (Second) of Property: Donative Transfers § 9.1, comment d (1981) ("a restraint against a suit for the construction of a dispositive provision should not cause a forfeiture of any interest if there was probable cause for bringing the construction suit").

Here, the no-contest clause in Article Twelve, Section Six of the Trust provides, in relevant part:

"If any devisee, legatee, or beneficiary under my Trust or any amendment to it, no matter how remote or contingent such beneficiary's interest appears, or any of my legal heirs, or any person claiming under any of them, directly or indirectly, does any of the following, then in that event I specifically disinherit each such person, and all such legacies, bequests, devises and interests given to that person under my Trust or any amendment to it, or any other Trust document created by me at any time, shall be forfeited and shall be distributed as provided elsewhere herein as though he or she had predeceased me without issue:

"a.   unsuccessfully challenges the appointment of any person named as a Trustee in said trust or any amendment to it, or unsuccessfully seeks the removal of any person acting as a Trustee;

"b.   objects in any manner to any action taken or proposed to be taken in good faith by the Trustee under said trust or any amendment to it, whether the Trustee is acting under court order, notice of proposed action or otherwise, and said action or proposed action is later adjudicated by a court of competent jurisdiction to have been taken in good faith;

"c.  objects to any construction or interpretation of said trust or any amendment to it, or the provisions of either, that is adopted or proposed in good faith by the Trustee, and said objection is later adjudicated by a court of competent jurisdiction to be an invalid objection."

The district court concluded Lawrence's objection to the Trustees' action of entering into a contract for deed with Dennis violated subsection "b" of the no-contest clause and Lawrence lacked probable cause to challenge that action.

On appeal, Lawrence reiterates his argument below that he did not violate the no-contest clause because he simply sought interpretation of the Trust's provisions. See Restatement (Second) of Property§ 9.1, comment c (1981) (noting that restraints upon contests to will or its provisions generally apply to attacks that seek to invalidate will or a portion thereof, and stating that "[a] suit to construe the language of a will is not a contest of the will," and "[a]n action commenced solely for the purpose of obtaining information concerning a donative transfer does not violate a no-contest provision"); Restatement (Second) of Property§ 9.1, comment d (1981) (defining an " 'attack' " as "an attempt to procure a judicial decision holding invalid some provision of the will or other donative transfer," and explaining that "[a] proceeding brought by a beneficiary for the purpose of securing a construction of an ambiguous limitation, valid under all possible constructions or valid under the construction advocated by the beneficiary, is not an 'attack' as that term is used in this section").

But we need not dwell on whether the district court correctly held that Lawrence's actions violated the provisions of the no-contest clause at issue here or whether his actions are more properly characterized as an effort to seek an interpretation of the Trust, as Lawrence contends. Even if we assume for purposes of argument that the district court correctly concluded Lawrence's actions violated the no-contest clause, as discussed below, we would find Lawrence had probable cause to challenge the Trustee's actions in violation of the no-contest clause.

*Lawrence had probable cause to challenge the Trustees' sale of the farm.*

In *Campbell*, our Court of Appeals adopted the definition of probable cause from Restatement (Second) of Property: Donative Transfers § 9.1, comment j (1981): "[P]robable cause [is defined as] 'the existence, at the time of the initiation of the proceeding, of evidence which would lead a reasonable person, properly informed and advised, to conclude that there is a substantial likelihood that the contest or attack will be successful.' " *Campbell*, 19 Kan. App. 2d at 801. The Restatement further explains:

"The evidence needed to establish probable cause should be less where there is strong public policy supporting the legal ground of the contest or attack. . . . A factor which bears on the existence of probable cause is that the beneficiary relied upon the advice of disinterested counsel sought in good faith after a full disclosure of the facts." Restatement (Second) of Property: Donative Transfers § 9.1, comment j (1981).

Whether probable cause exists is a question of fact. *Wells*, 26 Kan. App. 2d at 285. Ordinarily, we review a district court's factual findings under a substantial competent evidence standard. *Hodges v. Johnson*, 288 Kan. 56, 65, 199 P.3d 1251 (2009). But the Trustees urge us to consider the district court's determination that Lawrence lacked probable cause to challenge the sale of the farm as a negative finding. As the Trustees point out, in reviewing a negative factual finding, an appellate court considers whether the district court arbitrarily disregarded undisputed evidence or relied on some extrinsic consideration such as bias, passion, or prejudice to reach its determination. See *Hall v. Dillon Companies, Inc.*, 286 Kan. 777, 781, 189 P.3d 508 (2008).

But we need not resolve which standard of review applies here because under either standard, applying the probable cause definition set out above, we conclude the district court erred in concluding Lawrence lacked probable cause to challenge the sale of the farm.

In large part, Lawrence based his challenge to the sale of the farm on the Trustees' decision to finance the sale over a 6-year period. As we already have concluded, while the Trustees possessed broad authority to sell Trust real estate, they were not au-

thorized to enter into a contract for the sale of the farmland that extended beyond the 3-year period specifically provided under the Trust. In light of that conclusion, we necessarily hold that Lawrence had probable cause to challenge the sale of the farm. Accordingly, we reverse the district court's probable cause determination and its enforcement of the no-contest clause against Lawrence. Because the enforcement of the no-contest clause led to Lawrence's disinheritance, we remand for further proceedings, if any, necessary to effectuate our decision.

### ATTORNEY FEES AND COSTS UNDER K.S.A. 58a-1004

Finally, Lawrence claims he is entitled to an award of attorney fees and costs under K.S.A. 58a-1004. That section provides: "In a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney fees, to any party, to be paid by another party or from the trust that is the subject of the controversy." K.S.A. 58a-1004.

Here, after rejecting Lawrence's challenges to the Trust and enforcing the no- contest clause, the district court assessed the costs of the action against Lawrence. In light of our holdings today, we reverse the district court's award of costs and remand to the district court to fully consider Lawrence's entitlement to attorney fees and/or costs under K.S.A. 58a-1004. In determining the award, if any, the district court should give due consideration to the factors set forth in Rule 1.5(a) (2012 Kan. Ct. R. Annot. 492) of the Kansas Rules of Professional Conduct.

### CROSS-APPEAL

In their cross-appeal, the Trustees claim the district court erred in determining the effective date of Lawrence's disinheritance. This issue is rendered moot by our conclusion that the district court erred in enforcing the no-contest clause against Lawrence.

The Trustees also challenge the district court's conclusion that they acted in bad faith or breached their duty to provide Lawrence with an accounting. But the district court's bad faith finding pertained only to Lawrence's motion to remove the Trustees, which

the district court denied. And because Lawrence does not argue for reversal of the district court's denial of his motion to remove the Trustees, this issue also is moot. See *State v. Holmes*, 278 Kan. 603, 622, 102 P.3d 406 (2004) (issues not briefed are deemed abandoned).

## CONCLUSION

To summarize, we affirm the district court's ruling that Arthur did not intend the Trust to terminate immediately upon his death. We reverse the district court's conclusion that the Trustees had authority to enter into a contract for deed for the sale of the farmland that exceeded the 3-year period specifically provided by the Trust, but we decline to set aside the contract for deed. Further, we reverse the district court's determination that Lawrence lacked probable cause to challenge the sale of the farm. Consequently, we reverse the district court's enforcement of the no-contest clause against Lawrence, and we remand for any further proceedings necessary to effectuate our rulings.

Further, we reverse the district court's assessment of costs against Lawrence, and we direct the district court on remand to consider Lawrence's entitlement to attorney fees and costs under K.S.A. 58a-1004. Finally, we find the issues raised by the Trustees' cross-appeal to be moot.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

\* \* \*

BILES, J., dissenting in part: I would affirm the district court's decision in its entirety. The majority's threshold premise is that the contract for deed did not constitute a "purchase" of the farmland, as that term is used in the Trust instrument, because the installment payments extended more than 3 years after Arthur Hamel's death. The majority bases its conclusion on this language from the Trust:

"Upon my death, my Trustees shall have the farmland appraised. Based upon that appraisal, DENNIS HAMEL has the option to purchase any or all of the farmland *for three years immediately following my death at the appraised price.* During

such time period, the trust shall continue to hold the farmland not yet purchased by DENNIS HAMEL. All net income from the farmland shall be distributed annually to the beneficiaries in accordance with the above listed beneficiary's fractional share of the trust. If DENNIS HAMEL *has not purchased the farmland within the allotted time period, then it shall be divided in accordance with the above beneficiary's fractional shares.*" (Emphasis added.)

The majority then gleans the following conclusion: "The language of the Trust conveys Arthur's clear intent that the farmland would be disposed of within 3 years of his death—either through Dennis' purchase of the farm or by a division of farm property among the beneficiaries." This does not follow from the recited language or the remaining provisions in the Trust. And there is nothing in the quoted language that says anything about a final payout within 3 years. More importantly, this conclusion misconstrues the nature of a contract for deed, which may inadvertently do mischief with other real estate transfers under installment if the majority's conclusion is to be considered a correct statement of the law.

The majority agrees Dennis Hamel had 3 years to exercise the purchase option stated in the Trust instrument. The majority also agrees the Trust expressly gives the Trustees " 'the power to do all acts that might legally be done by an individual in absolute ownership and control of property.' " But if that is agreed to, it necessarily follows that the Trustee had authority to enter into a contract for deed for the farmland. Nothing in the trust instrument expresses—or even hints at—a prohibition against contracts for deed as an inappropriate vehicle to effect the farmland's purchase.

Finally, the majority notes the Trust instrument expressly authorizes the Trustees to lend money to any beneficiary provided the loan is adequately secured and bears a reasonable interest rate. The district court determined the conditions for such a transaction were met. And no challenge is put forward that the purchase price was below market, the interest rate insufficient or unreasonable, or that security for the installment sale was inadequate. Taken together, and based on these findings by the district court, these Trust provisions authorized a contract for deed with Dennis.

The district court went on to hold that terms of the contract of sale were discussed with all trust beneficiaries, including Lawrence, and that the sale was entered into in good faith. The district court concluded: "The sale of the farm ground under the terms contained in the contract of sale was in all respects proper under the terms of the Trust." These conclusions are supported by the record, and the applicable law and should be affirmed.

But according to the majority, a transgression occurs in the term in the contract for deed that extended installment payments beyond 3 years. The majority concludes: "Under the terms of the contract for deed at issue here, the purchase of the farmland would not be final, if at all, for more than 6 years after Arthur's death." But this requires a conclusion that a contract for deed cannot be a "purchase" of real estate, as that term is used in the Trust. I disagree.

Contracts for deed are common in the acquisition of real estate in this state. K.S.A. 79-3101 has long provided that contracts for deed are treated for purposes of the applicable statutes as a mortgage of real property to secure the balance of the unpaid purpose price. And such contracts are subject to state usury laws. K.S.A. 16-207(b); *Beltz v. Dings*, 27 Kan. App. 2d 507, 512, 6 P.3d 424 (2000).

This court held in *In re Estate of Hills*, 222 Kan. 231, 241-42, 564 P.2d 462 (1977), that an installment real estate contract transfers the seller's interest in the real estate to the buyer when the contract is made—not after all the installment payments are made. The court also noted that when a deed is placed in escrow, which is a typical feature of a contract for deed, it is " 'in legal effect a delivery of it to the grantee, subject only to the subsequent condition of final payment.' " 222 Kan. at 238 (quoting *Gault v. Hurd*, 103 Kan. 51, 53, 172 Pac. 1011 [1918]); see also *Torluemke v. Abernathey*, 174 Kan. 668, 670-71, 258 P.2d 282 (1953) (beneficial incidents of ownership under contract for deed passed at the moment of contract execution and initial actions pursuant to contract); *Graham v. Claypool*, 26 Kan. App. 2d 94, 95-96, 978 P.2d 298 (1999) (stating general rule that purchaser in a sale of real estate under an installment land contract, *i.e.*, contract for deed, becomes

the equitable owner of the realty and the seller, although holder of legal title, retains a secured interest in the property to protect future payments); *Century Savings Ass'n v. C. Michael Franke & Co.*, 9 Kan. App. 2d 776, 778, 689 P.2d 915 (1984) (contract for deed operates as a transfer of real estate sufficient to trigger a due-on-sale clause in promissory note).

The formality of a contract for deed, accompanied by the facts here that Dennis acquired the right to possession, retention of income from the property, the duty to pay taxes, and responsibility for the farmland's upkeep, is sufficient to show the Trustees completed a "purchase"—as that term should be reasonably construed from the Trust instrument—by reducing what was a farmland asset to a contract for ongoing installment payments. There is nothing in the Trust instrument from that perspective that prevents the transaction. I would affirm the district court on that basis, and with it, the remainder of the district court's ruling founded upon that determination.