NOT DESIGNATED FOR PUBLICATION

No. 120,931

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Estate of
JAMES E. THORN.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; ROBB W. RUMSEY, judge. Opinion filed April 17, 2020. Affirmed.

*James T. McIntyre*, of Law Offices of James T. McIntyre, of Wichita, for appellant Jamea Wilson.

*Shane A. Rosson*, of Triplett Woolf Garretson, LLC, of Wichita, for appellee Kimberly Tolley.

Before LEBEN, P.J., SCHROEDER, J., and LAHEY, S.J.

PER CURIAM: On March 2, 2018, James E. Thorn died testate. Upon the death of her father, Kimberly Tolley petitioned the district court to admit Thorn's Last Will and Testament (the Will) to probate. The petition reflected Thorn was survived by his two daughters, Tolley and Jamea Wilson. Wilson filed an objection to the admission of the Will to probate, claiming Thorn lacked testamentary capacity to make the Will or, in the alternative, the Will was the product of undue influence. In addition to making provisions for the benefit of his daughters, Thorn inserted an *in terrorem* clause in the Will stating anyone who challenged the admission of the Will to probate without probable cause would be disinherited and receive nothing under the Will.

1

Following an evidentiary hearing, the district court admitted the Will to probate, finding: (1) Thorn had testamentary capacity at the time he executed the Will; (2) the Will was not the product of undue influence; and (3) Wilson did not have probable cause to contest the Will. As a result of these findings and after the appropriate petition was filed by Tolley, the district court enforced the *in terrorem* clause. On appeal, Wilson argues points (1) and (3) were erroneously decided; she does not appeal the district court's finding the Will was not the product of undue influence. Upon examination of the record, we find substantial competent evidence supports the district court's decision on both issues appealed. We affirm.

FACTS

We briefly set out the facts as they are well known to the parties. In October 2018, the district court admitted Thorn's Will to probate following his death in March 2018. In addition to his two children, Thorn had a longtime companion, Betty Marshall, who he met in 1981. Thorn began experiencing falls and health-related issues in January 2018, resulting in his hospitalization; he experienced some confusion during one or more of his hospital stays but quickly improved; and he participated in rehabilitation services. During this time, he visited with his attorney friend Sean Brennan about his estate plans. Brennan referred Thorn to Jennifer Stultz, an experienced estate planning attorney. Marshall and Brennan contacted Stultz and planned for Thorn to meet with her.

Stultz first met with Thorn on January 16, 2018. Stultz recalled Thorn asking several appropriate questions and responding appropriately to her questions. Thorn discussed various property he owned, including: his assets; a safety deposit box and its contents; paperwork related to unclaimed property his parents had owned, which was held by the Secretary of State; a safe in his garage and its contents; his vehicle, home, and firearms; two storage units he owned; and cemetery plots his parents had owned. Thorn also talked to Stultz about his two children, Wilson and Tolley, as well as about Wilson's

2

children and Tolley's children. Thorn told Stultz he wanted Tolley to receive a significant portion of his estate outright and Wilson to receive a lesser portion of his estate. He expressed concerns Wilson was irresponsible and he wanted her share of the estate held in trust, to be paid at $500 per month until exhausted. Thorn was also concerned Wilson might contest his Will, so Stultz specifically discussed with Thorn including an *in terrorem* clause.

Stultz again visited with Thorn on or about January 22, 2018, regarding how much he wanted to leave in trust for Wilson. Thorn told Stultz he wanted to leave $70,000 for Wilson. Stultz prepared Thorn's Will and other estate planning documents in accordance with their discussions. Stultz met with Thorn in person for approximately two hours on January 23, 2018, to review the Will and other documents prepared by her. Stultz' administrative assistant, Scott Lawrence, accompanied her to the meeting. Stultz did not observe any signs of confusion in Thorn during their meetings. Stultz reviewed Thorn's Will and the other documents with him, and he asked appropriate and intelligent questions before executing them on January 23, 2018. Thorn confirmed the Will and other documents reflected what he wanted to do with his estate. Stultz believed Thorn understood the provisions of his Will and the other documents he executed. Lawrence, one of the witnesses to the Will, also observed no signs of confusion and noted Thorn asked appropriate questions during the meeting.

Tolley and Marshall were also present for parts of the meeting on January 23, 2018. Marshall did not observe any confusion during the portion of the meeting at which she was present. At the end of the meeting, Stultz discussed the Will and other documents with Thorn without Tolley or Marshall present. Thorn executed the Will and other documents in Stultz' presence and in the presence of the two disinterested witnesses— Lawrence and Virginia Rowsey, the manager of the facility where Thorn was living. After Thorn signed his Will, the two witnesses signed as attesting witnesses. Rowsey

observed no signs of confusion and believed Thorn "absolutely" understood what was happening.

After executing the Will and the other estate planning documents, Thorn's health declined and, as a result of one of his hospitalizations, cancerous masses were found in his lungs. Thorn went into hospice care and later died from lung cancer on March 2, 2018.

Tolley filed a petition to admit Thorn's Will to probate on March 14, 2018. The district court filed an order on March 15, 2018, setting a hearing date for April 17, 2018. Notice was mailed to Wilson on March 16, 2018. Wilson retained an attorney who entered an appearance on her behalf on March 19, 2018. Through her attorney, Wilson filed an objection to the admission of the Will on April 16, 2018, and asserted Thorn suffered from chronic alcoholism as well as numerous medical problems before executing the documents at issue. Wilson alleged Thorn lacked capacity to execute the documents, or, in the alternative, the documents were the product of undue influence.

Stultz, Lawrence, Rowsey, Marshall, and Wilson testified at the bench trial. Stultz, Lawrence, Rowsey, and Marshall each testified regarding the matters previously discussed herein. Wilson testified she saw Thorn every day in January 2018, and Thorn recognized her and her husband every time they visited him. Although Wilson alleged Thorn was an alcoholic, she acknowledged he did not consume any alcohol on the date he executed the Will. Wilson claimed Thorn had an estate plan drafted by a different law firm but acknowledged her attorney issued a business record subpoena to the firm and no documents were produced in response. Wilson admitted she had financial troubles; several creditors had open judgments against her, she had declared bankruptcy a few years earlier, and she had recently been sued by a Ford dealership and Ford Motor Credit. Wilson acknowledged the trust's spendthrift provision would protect the money from her creditors.

4

The district court admitted the Will to probate, finding Thorn had the requisite testamentary capacity at the time the Will was executed and the Will was not the product of undue influence. The district court further found Wilson's challenge fell within the scope of the *in terrorem* clause but withheld judgment on enforcement of the clause. Tolley petitioned to enforce the *in terrorem* clause. The record reflects the district court held a hearing on the petition; however, a transcript of the hearing is not included in the record. The district court in its written order held: "Wilson did not have probable cause to contest [Thorn's] estate plan. Therefore the Court hereby enforces the *in terrorem* provision."

ANALYSIS

On appeal Wilson limits her argument to two issues. Wilson claims the district court erred in finding (1) Thorn had capacity to execute the Will and (2) the *in terrorem* clause should be enforced.

*Thorn had capacity to execute his Will.*

"When offering a will to probate, the burden of proof is initially upon the proponent to make a prima facie case showing capacity and due execution of the will." *In re Estate of Farr*, 274 Kan. 51, 58-59, 49 P.3d 415 (2002). Once such a showing has been made, the burden is on the party contesting the will to prove a lack of testamentary capacity. 274 Kan. at 59. The contesting party must prove "lack of testamentary capacity by clear, satisfactory, and convincing evidence." 274 Kan. at 64. Whether testamentary capacity exists is a question of fact. *In re Estate of Harris*, 166 Kan. 368, 372, 201 P.2d 1062 (1949). Our review of the district court's finding is limited and "is only concerned with the inquiry whether there was substantial competent evidence to support the trial court's finding of capacity. [We do] not compare or weigh testimony." *In re Estate of Perkins*, 210 Kan. 619, 626, 504 P.2d 564 (1972).

5

In order to have testamentary capacity, the testator must

"know and understand the nature and extent of his or her property and have an intelligent understanding of the disposition he or she desires to make of it, realize who his or her relatives are and the natural objects of his or her bounty, and comprehend the nature of the claims of those he or she desires to include and exclude from participation in the property distribution." *In re Estate of Farr*, 274 Kan. 51, Syl. ¶ 5.

Here, Stultz' testimony reflects Thorn understood what property was covered by the Will, how he wanted it distributed, who his children were, what property he wanted them to receive, and how he wanted them to receive it. Stultz observed no indication Thorn was confused or pressured when she discussed the Will and other estate planning documents with him during the month of January 2018. Based on this evidence, Tolley made a prima facie showing of capacity, which shifted the burden to Wilson.

Wilson argues the district court erred in finding Thorn had testamentary capacity, claiming the district court's conclusion was not supported by substantial competent evidence. Wilson incorrectly asserts the standard of review is abuse of discretion. Here, however, the issue is not whether the district court erred in finding testamentary capacity; but rather, whether Wilson rebutted the prima facie showing of capacity. See *In re Estate of Farr*, 274 Kan. at 58-59. Among Wilson's contentions regarding Thorn's capacity was the fact he showed confusion at various times between December 2017 and February 2018, as well as his misspelling of Wilson's first name—"Jama" as opposed to "Jamea"— in the Will and related trust documents.

The district court found the testimony of the subscribing witnesses showed Thorn had the requisite mental capacity to execute his Will and the misspelling of Wilson's first name was insufficient. In its oral ruling, the district court discussed the various evidence regarding Thorn's medical issues and documented periods of confusion within the relevant timeframe. However, it held: "As to the testamentary capacity, the important

6

date is the date the will was signed." The district court specifically noted it had "the ability to look at periods of time surrounding the will, that before and that after, in order to make a determination as to whether . . . [Thorn] . . . had testamentary capacity." Based on the district court's oral explanation of its ruling and its written findings, the record reflects the district court rejected Wilson's contentions that Thorn lacked testamentary capacity.

The district court's determination that Wilson did not meet her burden of proof is a negative factual finding. In reviewing a negative finding, we consider whether the district court arbitrarily disregarded undisputed evidence or relied upon some extrinsic consideration such as bias, passion, or prejudice to reach its decision. The negative finding standard applies to the district court's determination on an objection to the admission of documents to probate. See *Cresto v. Cresto*, 302 Kan. 820, 845, 358 P.3d 831 (2015).

Wilson's argument is unpersuasive as she has not shown the district court disregarded undisputed evidence. Stultz' testimony as an experienced lawyer indicates Thorn had capacity at the time the Will provisions were discussed, drafted, and executed. Stultz' observations of Thorn's mental state were corroborated by Marshall, Lawrence, and Rowsey. Marshall did not believe Thorn was confused in either of his meetings with Stultz. Lawrence indicated Thorn appeared alert during the January 23rd meeting with Stultz and did not exhibit any signs of confusion. Lawrence testified Stultz discussed the *in terrorem* clause and the other provisions of the Will with Thorn and Thorn confirmed the Will and other documents were consistent with his wishes. Lawrence believed Thorn understood what he was signing. Like Marshall and Lawrence, Rowsey also believed Thorn understood what he was doing and did not exhibit any signs of confusion.

Wilson's argument rests on contrary evidence, most of which is supported by material attached to her brief and not included in the record on appeal. The attached evidence is highly disputed by the testimony of Stultz, Marshall, Lawrence, and Rowsey.

The evidence shows there were no concerns about Thorn's capacity or understanding when he signed the Will on January 23, 2018. Thorn's prior hospitalizations did not affect his capacity on the day he signed his Will. Wilson has not shown the district court disregarded undisputed evidence, nor has she argued or demonstrated the district court's decision was based on improper extrinsic considerations such as bias, passion, or prejudice. Wilson has failed to show the district court erred in admitting the Will to probate.

*Wilson lacked probable cause to contest the Will.*

The *in terrorem* clause in Thorn's Will penalized anyone who challenged the admission of his Will to probate without probable cause.

> "'An *in terrorem* clause is a clause in a will in which a testator imposes upon a devisee or legatee a condition that he or she shall not dispute the provisions of the will or the gift shall be void.'

> "Our appellate courts have consistently held that *in terrorem* clauses in wills are valid and enforceable against a beneficiary who attacks the validity of the will, or provisions therein, unless the beneficiary had probable cause to challenge the will or its provisions.

> . . . .

> "Courts apply a two-part analysis to determine whether a no-contest clause should be enforced against a beneficiary. First, the court must determine whether the beneficiary's action or actions violated the express terms of the no-contest clause.

8

"Second, the court must determine whether the beneficiary had probable cause to take the action or actions that violated the no-contest clause. [Citations omitted.]" *Hamel v. Hamel*, 296 Kan. 1060, 1074-76, 299 P.3d 278 (2013).

In *Hamel*, our Supreme Court cited favorably to the Restatement (Second) of Property: Donative Transfers § 9.1, comment j (1981), recognizing a good definition for probable cause is "'the existence, at the time of the initiation of the proceeding, of evidence which would lead a reasonable person, properly informed and advised, to conclude that there is a substantial likelihood that the contest or attack will be successful.'" 296 Kan. at 1078. "Whether probable cause exists is a question of fact." 296 Kan. at 1078.

Wilson argues we should review for an abuse of discretion. She asserts: "All reasonable persons would conclude that the competency of James Thorn on January 23, 2018 was at issue, and not something clearly demonstrated." Tolley argues we should review the district court's conclusion as a negative finding. While our Supreme Court avoided deciding this question in *Hamel*, under either standard of review Wilson's argument fails.

Essentially, Wilson asserts she lacked adequate time to investigate and did not have all the relevant medical information when she objected to the admission of the Will. She fails to frame her argument within the probable cause standard defined in *Hamel*. Her position seems generally contrary to the applicable legal standard. Wilson has not demonstrated "'the existence, at the time of the initiation of the proceeding, of evidence which would lead a reasonable person, properly informed and advised, to conclude that there is a substantial likelihood that the contest or attack will be successful.'" See 296 Kan. at 1078.

Wilson filed her objection to the admission of the Will on April 16, 2018, the day before the hearing to admit the Will was originally set. In her objection, Wilson asserted Thorn suffered from chronic alcoholism as well as numerous medical problems before executing the documents at issue. In her answers to interrogatories filed August 8, 2018, Wilson stated she was currently in the process of requesting Thorn's medical records from the relevant timeframe. Wilson's brief does not explain any reason she could not obtain relevant medical records prior to filing her objection.

The Will provided Wilson with notice the witnesses to the Will were Lawrence and Rowsey. However, Wilson does not assert or explain any impediment in locating or contacting either Lawrence or Rowsey prior to filing her objection. Both signed the affidavit of proof of will, indicating to the best of their knowledge Thorn was of sound mind and under no constraint or undue influence. The witnesses attested to facts directly contrary to the allegations in Wilson's objection. Investigating the basis for their belief would certainly be something "'a reasonable person, properly informed and advised'" would do prior to filing an objection to the admission of the Will to probate and record. *Hamel*, 296 Kan. at 1078.

The record contains substantial competent evidence to support the district court's finding Wilson lacked probable cause to object to the admission of the Will to probate. The *in terrorem* clause was properly invoked and enforced.

Affirmed.