NOT DESIGNATED FOR PUBLICATION

No. 122,511

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MICHELLE A. MEAD, TAMMARA K. DE LA ROSA, and SHANNON R. PISHNY,
*Appellees*,

v.

BOB JOE SMALL, Trustee of the HERLINDA SMALL REVOCABLE LIVING TRUST,
*Appellant*,

*v.*

The ESTATE OF SHIRLEY WILLIAM,
*Defendant*.

MEMORANDUM OPINION

Appeal from Finney District Court; MICHAEL L. QUINT, judge. Opinion filed May 21, 2021.
Affirmed.

*Lane L. Frymire*, of Yoxall, Antrim & Frymire, LLP, of Liberal, for appellant.

*Zachary D. Schultz*, of Schultz Law Office, P.A., of Garden City, for appellees.

Before ARNOLD-BURGER, C.J., POWELL and CLINE, JJ.

PER CURIAM:  "Family members often fight over the estates of their departed loved ones. It is a safe guess, however, that many of these decedents had confidently assumed that their own families would *not* fight." McMullen, *Keeping Peace in the Family While You Are Resting in Peace:  Making Sense of and Preventing Will Contests*, 8 Marq. Elder's Advisor 61 (2006). This case involves a family dispute among a mother's

1

children and grandchildren over transferring ownership of her home to her daughter while the mother was alive, but incapacitated.

The district court granted summary judgment in a quiet title action over property in Garden City, Kansas, once held in a revocable living trust executed by the parties' mother and grandmother. In March 2018, Michelle A. Mead, Tammara K. De La Rosa, and Shannon R. Pishny—the settlor's grandchildren (Plaintiffs) sued Bob Joe Small—the settlor's son, in his capacity as trustee. After stipulating to the relevant facts, the parties filed dueling motions for summary judgment. The district court granted summary judgment for the Plaintiffs, finding that the language of the trust allowed the distribution of a gift of the settlor's house to her daughter before the settlor's death. Because we agree with the district court's interpretation of the trust agreement, we affirm.

FACTUAL AND PROCEDURAL HISTORY

In August 2009, Herlinda Small created the Herlinda Small Trust (Trust) and conveyed to it, among other assets, all her right, title, and interest in her home located in Garden City, Kansas (House). Herlinda designated herself as the trustee, her daughter Shirley William as the successor trustee, and her son, Bob Joe Small as the next successor trustee. The Trust contained a provision gifting the House to William. Herlinda became unable to manage her financial and legal affairs due to dementia, so William assumed the position of successor trustee. A few years later, William became ill and shortly before her death, executed a deed (William Deed) conveying the House from the Trust to herself and Plaintiffs—her daughters—as joint tenants with rights of survivorship. In December 2017, the Plaintiffs recorded the William Deed with the local Register of Deeds. A month later, William died, and Herlinda's son Bob Joe Small (Defendant) ascended to the position of successor trustee.

2

Soon after their mother's death, Plaintiffs entered an agreement through which a third party would purchase the House. Upon learning about the William Deed and the purchase agreement, Defendant (Plaintiffs' uncle) filed an affidavit of equitable interest in his capacity as trustee with the Finney County Register of Deeds.

In March 2018, Plaintiffs filed a quiet title action against Defendant, in his capacity as trustee of the Trust. Plaintiffs sought to quiet title as to House. By agreement of the parties, the House was sold and the Plaintiffs deposited the proceeds of $205,121.33 with the Clerk of the District Court pending further order of the court.

*The parties each moved for summary judgment.*

After agreeing that there was no factual dispute, the parties filed competing summary judgment motions. The central issue was whether the language of the Trust allowed the gift of the House to William to be transferred to William before Herlinda's death.

Defendant argued he was entitled to judgment as a matter of law because William breached her fiduciary duty as trustee when she conveyed the House to herself and her descendants in violation of terms of the Trust and the Kansas Uniform Trust Code. He asserted that the purported conveyance "deprived the [Trust] of a principal asset that was to be held, managed, and used exclusively for the benefit of Herlinda Small," in violation of K.S.A. 58a-801. He also asserted that William placed her own interests above that of the purpose of the Trust, which was to use and distribute the trust assets exclusively for Herlinda's benefit during her lifetime. Thus, Defendant contended the purported conveyance was void and asked the district court to quiet title to the $205,121.33 proceeds to the Trust.

3

Plaintiffs responded to Defendant's motion, refuting his assertion that William breached her fiduciary duty as trustee. According to Plaintiffs, "William was carrying out her fiduciary duty by enacting the wishes of Herlinda Small as evidenced by the clear language of the Trust Agreement." Plaintiffs also asserted that Defendant's proposed remedy went against the "clear intent" of the Trust, which was that William would receive the House.

In their motion for summary judgment, Plaintiffs argued that the clear intent of the Trust was for William to receive the House and the Trust contained no limiting provision that the distribution of the express gift of the House to William must only occur after Herlinda's death. Plaintiffs also asserted that the anti-lapse provisions of the Trust applied to the distribution of the House to William, meaning that even if the House remained within the Trust until Herlinda's death, the trustee would be required to distribute the House to Plaintiffs upon Herlinda's death.

Defendant responded that Plaintiffs' interpretation of the Trust directly conflicted with its express purpose, which was to use the trust assets exclusively for Herlinda's use and benefit. According to Defendant, allowing William to convey a "principal asset" benefited herself as acting trustee, rather than Herlinda as the primary beneficiary.

Ultimately, the district court issued a journal entry of summary judgment in Plaintiffs' favor. In the order, the court made these pertinent findings of fact and conclusions of law regarding the Trust:

> "10. The Distribution of Property is found in Article IV [of the Trust] which is titled (somewhat erroneously) as Disposition Provisions After Death of Grantor. The sections are set out with specificity to reflect as follows:
> "'A. **Payment of expenses of Grantor's Estate**. On the death of the Grantor . . .'

4

"'B. **Payment of expenses of Administration**. Upon the death of Grantor
. . .'

"'D. **Distribution of remainder of Trust Estate**. Upon the death of Grantor
. . .'

"'E. **Distribution of deceased Beneficiary Share**. In the event . . .'

"11. Paragraph C of the same section exclusively leaves off the instruction that
this one paragraph, the death of the grantor, is not a prerequisite. It reads as
follows:

"'C. **Distribution of Gifts.** The Trustee shall distribute gifts of Trust
property, subject to the provisions of Article IV paragraph F herein below,
to beneficiaries as follows:  Shirley William _____ Grantor's residence.'

"12. The Courts are obligated to try to decipher and apply the expressed wishes
of the Grantor. The order of the use of the estate funds runs in this order:
"1. Payment of expenses of Grantor's Estate.
"2. Payment of expenses of Administration.
"3. Distribution of Gifts.

"13. The sole 'Gift' designated is the House and should go to Shirley William. All
other bequest or distribution is subject to those first three steps.

"14. If there is insufficient assets, Shirley William as well as the three boys will
receive nothing else from the estate.
. . . .
"Judgement is entered for the Plaintiffs and the Clerk of the Court is authorized
to pay out the money being held by it, at the conclusion of the appeal time to run from
this written order.

"Attorney fee request is denied."

Defendant timely appealed. The parties later advised this court that Herlinda died
on January 6, 2020—after the filing of this appeal.

5

Defendant argues the district court erred in granting Plaintiffs' motion for summary judgment based on its interpretation of the Trust. Defendant contends the court incorrectly concluded that the terms of the Trust allowed William to distribute the House to herself while acting as trustee, while Herlinda was still alive, and that doing so breached her fiduciary duties. Defendant, thus, asks this court to reverse the summary judgment ruling and remand with directions to quiet title as to the proceeds from the sale of the House to the Trust. We decline the invitation.

*The standard of review for reviewing a summary judgment ruling is well known.*

This court's standard of review on appeal from a district court's grant of summary judgment is well known. The moving party must show, based on the "pleadings, the discovery and disclosure materials on file, and any affidavits or declarations" that there are no genuine disputes of material fact and that they are entitled to judgment as a matter of law. K.S.A. 2020 Supp. 60-256(c)(2); *Montgomery v. Saleh*, 311 Kan. 649, 652, 466 P.3d 902 (2020). Since the parties here stipulated to the relevant facts, this court conducts de novo review of the district court's legal conclusions. *GFTLenexa, LLC v. City of Lenexa*, 310 Kan. 976, 981-82, 453 P.3d 304 (2019).

When resolving any issues involving statutory interpretation or the interpretation of a written instrument, this court exercises unlimited review. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019) (statutory interpretation); *Hamel v. Hamel*, 296 Kan. 1060, 1068, 299 P.3d 278 (2013) ("The interpretation and legal effect of a written instrument is a matter of law over which we exercise unlimited review.").

The parties agree that the issues presented in this appeal are purely legal. But the parties disagree on three main points. First, they disagree whether the terms of the Trust

6

authorized the distribution of the House before Herlinda's death. Second, they disagree whether William violated any fiduciary duties owed as trustee when she conveyed the House to herself and her children. Finally, because of Herlinda's death, the parties disagree as to whether the case is now moot since the trustee must distribute the House to the Plaintiffs anyway under the Trust.

*The gift distribution provisions did not require the grantor's death as a prerequisite.*

Plaintiffs' primary contention is that the terms of the Trust did not explicitly require the distribution of the House to occur after Herlinda's death. Defendant responds by arguing that such an interpretation contradicted the express purpose of the Trust, which was to provide for Herlinda's use and benefit during her lifetime.

When interpreting a trust, the court's primary duty is to determine the settlor's intent by reading the trust as a whole. If that intent can be established from the express terms of the trust, the court must carry out those terms unless they go against law or public policy. *Hamel*, 296 Kan. at 1068. The test for determining whether a trust is ambiguous is whether the testator's intention can be determined from the instrument's four corners. *In re Estate of Oswald*, 45 Kan. App. 2d 106, 112, 244 P.3d 698 (2010).

There are three sections of the Trust that govern division and distribution of trust property: Article III covers "DISPOSITIVE PROVISIONS DURING GRANTOR'S LIFETIME"; Article IV covers "DISPOSITIVE PROVISIONS AFTER DEATH OF GRANTOR"; and Article V covers "ADDITIONAL DISPOSITIVE PROVISIONS." Although these are the headings in the trust for each section, Article XV, paragraph E specifically provides that "[t]he headings, titles and subtitles used herein are for the convenience of reference only and do not form a part hereof and in no way modify, interpret or construe the meanings of the provisions contained herein and shall not affect the construction hereof."

7

The parties direct this court's attention to the provisions in Article IV that deal with the trustee's responsibilities related to distribution of the trust estate that are mostly triggered "[o]n" or "[u]pon the death of the Grantor." The lone exception is Paragraph IV(C), which merely provides: "The Trustee shall distribute gifts of trust property, subject to the provisions of ARTICLE IV PARAGRAPH F hereinbelow, to beneficiaries as follows: Shirley William: Grantor's Residence."

The district court correctly noted that Paragraph IV(C) "exclusively leaves off the instruction that this one paragraph, the death of the grantor, is not a prerequisite." Based on the order of Paragraphs IV(A), (B), and (C), the court then found that the "expressed wishes" of Herlinda were that the estate funds be used in a particular order: (1) "Payment of expenses of Grantor's Estate"; (2) "Payment of expenses of Administration"; and (3) "Distribution of Gifts." Even so, the court concluded that Trust allowed the trustee to gift the House to William and Plaintiffs were entitled to the proceeds of the sale of the House.

The court's findings, at first blush, seem contradictory, because it would not be possible for a trustee to distribute the House before Herlinda's death if payment of expenses related to the estate and administration of the trust must occur first and those are only triggered "[o]n" or "[u]pon" the grantor's death. Yet, because the Trust specifically says that a reader is not to draw any conclusions from the titles used, we agree with the district court's ultimate conclusion.

The Defendant does not disagree with the Trust language, but he contends that transferring the House prior to Herlinda's death contradicts the express *purpose* of the Trust. This argument leads to the second area of dispute—Defendant's claim that William breached her fiduciary duties and, as a result, the transfer of the House to William is void.

8

*Defendant has failed to establish that William violated her fiduciary responsibilities as trustee.*

Defendant argues that William breached several fiduciary duties owed as trustee when she conveyed the House to herself and her children. Plaintiffs respond to this argument by asserting that the "clear intent" of the settlor was that William and Plaintiffs would receive the house, so William could not have breached any fiduciary duties by enacting that clear intent.

*A trustee holds several fiduciary obligations to beneficiaries of the trust.*

The Kansas Uniform Trust Code, found in K.S.A. 58a-101 et seq., imposes several fiduciary obligations on trustees. Defendant asserts that William violated two of those duties in this case—good faith and loyalty. First, she breached the duty to administer the trust in good faith when she distributed trust property before Herlinda's death. Second, she breached the duty of loyalty by conveying the property to herself and her children.

### a.  Duty to administer in good faith

First, Defendant asserts that William violated a duty owed under K.S.A. 58a-801, which requires a trustee to "administer the trust in good faith, in accordance with its terms and purposes and the interests of the beneficiaries, and in accordance with this code." According to Defendant, William transferring the House to herself "deprived the [Trust] of a principal asset that was to be held, managed, and used exclusively for the benefit of Herlinda Small." Thus, Defendant suggests that William acted in bad faith by conveying the house prematurely—while Herlinda was still alive.

The Trust is specifically set up as a "revocable living trust," which this court has defined as

9

"a trust established during the settlor's lifetime in which the settlor reserves the right to alter, amend, or revoke the trust and may retain the right during his or her lifetime to direct the disposition of principal and income. At the death of the settlor, the trust assets are disposed of in accordance with the terms of the trust document." *Commerce Bank, N.A. v. Bolander*, 44 Kan. App. 2d 1, 13, 239 P.3d 83 (2007).

But as mentioned, the terms of the trust control when courts are trying to determine the settlor's intent, so the disposition of trust property is ultimately subject to the language in it. See *Hamel*, 296 Kan. at 1068.

Again, there are three sections of the Trust that govern division and distribution of trust property:  Article III covers "Dispositive Provisions During Grantor's Lifetime"; Article IV covers "Dispositive Provisions After Death of Grantor"; and Article V covers "Additional Dispositive Provisions." Article XV, Paragraph E specifically provides that "[t]he headings, titles and subtitles used herein are for the convenience of reference only and do not form a part hereof and in no way modify, interpret or construe the meanings of the provisions contained herein and shall not affect the construction hereof."

Defendant directs this court's attention to the distribution provisions contained Article III, which all deal with the trustee's responsibilities in administering the trust during Herlinda's life. Paragraph III(A) requires the trustee to pay expenses related to "the establishment, management and administration of the trust estate" from either the income or principal of the trust estate, with the remainder treated as "'net income.'" Paragraph III(B) then requires the trustee to make payments "[d]uring the lifetime of the Grantor . . . to the Grantor" from the net income "in quarter-annual or more frequent intervals." But "[i]f the Trustee considers the net income insufficient," the Trustee may "invade principal in a liberal manner" to provide "for the proper health, education, support, maintenance and comfort of the Grantor." So in other words, the primary role of the trustee during Herlinda's life appears to be distributing trust income to Herlinda as specified in the agreement, with broad discretion to invade the principal of the trust

10

estate, if necessary, for Herlinda's benefit. See K.S.A. 2020 Supp. 58a-603(a) ("While a trust is revocable, the duties of the trustee are owed exclusively to the settlor.").

In contrast, most of the provisions in Article IV deal with the trustee's responsibilities related to distribution of the trust estate that are only triggered "[o]n" or "[u]pon the death of the Grantor." The lone exception is Paragraph IV(C), which merely provides that "[t]he Trustee shall distribute gifts of trust property, subject to the provisions of ARTICLE IV PARAGRAPH F hereinbelow, to beneficiaries as follows: Shirley William . . . Grantor's Residence." The district court interpreted the omission of that language in Paragraph IV(C) to mean that the "the death of the grantor, is not a prerequisite" for distribution and thus approved the December 2017 conveyance of the House by William to herself and Plaintiffs. But the Defendant argues that these provisions are only part of the Trust and we should not view them in isolation. See *Hamel*, 296 Kan. at 1068 ("[T]he court's primary function is to ascertain the intent of the settlor by reading the trust in its entirety.").

As Defendant points out, the trustee's powers are also defined in other provisions. The preamble to Article VI grants expansive powers to the trustee, providing that "the Trustee shall have full power to do everything it deems to be in the best interests of the beneficiaries of the trust, including, but not limited to, the following powers and discretion." Relevant to this appeal, Paragraph VI(B) specifically authorizes the trustee "[t]o manage, control, sell, [or] convey [such trust property] as the Trustee may deem advisable."

Even so, the trust also explicitly limits the trustee's powers associated with managing trust property. Paragraph VII(A) provides:

> "No powers, enumerated herein or accorded to Trustee generally by law, shall be construed to enable any person appointed as Trustee or otherwise, or any other person, to

11

purchase, exchange or otherwise deal with or dispose of the principal or income of this trust for less than an adequate consideration in money or money's worth . . . . This limitation shall not apply to a Grantor acting as Trustee."

Similarly, Paragraph VII(C) provides: "No Trustee or Co-Trustee who is also a beneficiary of an irrevocable trust share hereunder shall have the power to invade the trust principal for his or her benefit prior to the termination of the trust, except pursuant to the ascertainable standards set forth in this Trust Agreement."

Considering all of these provisions together, the Defendant suggests that the distribution of the House could only occur during Herlinda's lifetime in certain circumstances. One way would have been Herlinda herself conveying the House while she was trustee under Paragraph VII(A) "for less than an adequate consideration in money or money's worth." This does not apply because the parties stipulated that William was the acting trustee when she conveyed the House to herself and her daughters. Another would be after Herlinda was no longer acting as trustee, which occurred at some point between the establishment of the Trust in August 2009 and December 2017 when William ascended to the role. The key difference between these situations appears to be that only Herlinda acting as trustee could convey trust property without receiving some form of adequate consideration in return during her lifetime.

As Defendant also points out, the Trust was irrevocable once Herlinda no longer had capacity to act as trustee—i.e., once William began serving that role. Because William was also a beneficiary while serving as trustee, under Paragraph VII(C) she could not "invade the trust principal for . . . her benefit prior to the termination of the trust, except pursuant to the ascertainable standards set forth in this Trust Agreement." Under Paragraph III(C), William's power as trustee to invade the principal "in a liberal manner" was conditional. The trustee could only invade the principal "as is necessary" and "for the proper health, education, support, maintenance and comfort *of the Grantor*."

12

(Emphasis added.) In other words—ignoring the gift provision for purposes of this argument—the terms of the Trust permitted William to convey the House before Herlinda's death, but only upon adequate consideration and directed at benefiting Herlinda during her lifetime.

Unfortunately, there is no evidence available in the record on whether William and Plaintiffs received the House in 2017 after providing some form of adequate consideration to the Trust. The only fact known about the conveyance itself is that William executed the deed on December 21, 2017. In addition, there is no evidence in the record about the other assets in the Trust. There may have been more than adequate funds available to provide for Herlinda during her lifetime, excluding the House. Defendant makes only a general assertion that William must have breached her duty of good faith because the House was no longer available to liquidate and provide for Herlinda's expenses if needed. Without information about the status of the assets in the Trust when William conveyed the property or whether the Trust received any consideration for the conveyance of the House, we simply cannot conclude that William acted in bad faith— even if we disregard the explicit gift provision. For these reasons, there is no factual basis to find that William breached a duty of good faith by conveying away a trust asset while acting as trustee.

### b.     *Duty of loyalty*

Defendant also asserts William breached a duty of loyalty under K.S.A. 2020 Supp. 58a-802(a), which requires a trustee to "administer the trust consistent with the terms of the trust and solely in the interests of the beneficiaries." Under the duty of loyalty, a transaction involving trust property is "presumed to be affected by a conflict between personal and fiduciary interests if it is entered into by the trustee with . . . the trustee's descendants." K.S.A. 2020 Supp. 58a-802(c)(2). Such a transaction "is voidable

13

by a beneficiary affected by the transaction unless . . . [t]he *transaction was authorized by the terms of the trust*." (Emphasis added.) K.S.A. 2020 Supp. 58a-802(b)(1).

In short, since Herlinda specifically named William as the first successor trustee with no regard for the fact that she was a named beneficiary who stood to receive the House, this court cannot presume that the 2017 conveyance was affected by a conflict under K.S.A. 2020 Supp. 58a-802(c)(2). Defendant cannot reasonably claim that the conveyance should be void simply because William was the then-acting trustee because the terms of the trust authorized distribution of the House to her. See K.S.A. 2020 Supp. 58a-802(b)(1). By executing the conveyance to herself, William was not seeking to invade the principal, but rather sought to administer the Trust consistent with its terms. See K.S.A. 58a-1006 ("A trustee who acts in reasonable reliance on the terms of the trust as expressed in the trust instrument is not liable to a beneficiary for a breach of trust to the extent the breach resulted from the reliance."). So Defendant also fails to present evidence to support a claim of breach of the duty of loyalty.

In sum, the Defendant has failed to establish that William violated her fiduciary duties as trustee by conveyance of a trust asset, the House, to herself.

*Herlinda's death probably renders this case moot, but we elect not to dismiss the case for mootness.*

According to Plaintiffs, the case is now moot because Herlinda died during the pendency of this appeal and, under the terms of the Trust, the House would have passed to Plaintiffs upon her death anyway. Although Herlinda was still alive when the district court granted Plaintiffs' summary judgment motion, Plaintiffs still addressed the current situation as a possibility before the district court. Plaintiffs argued that "even if the subject property remained in the name of the trust," the distribution of the House as a gift to William was subject to an anti-lapse provision. Unfortunately, the district court's

14

summary judgment ruling did not mention this argument as a part of the rationale for its decision to quiet title in Plaintiffs.

Defendant challenges Plaintiffs' conclusions regarding the application of the anti-lapse provision in the Trust. Defendant asserts that William's death in 2018 caused the gift to lapse and fall into the remainder of the trust estate, so Herlinda's death does not influence the dispositive issues. To understand the party's conflicting positions a brief background on anti-lapse provisions is necessary.

At common law a gift to a devisee who died before the testator lapsed and would be transferred into the remainder estate, which is the result the Defendant seeks here. Anti-lapse statutes and trust provisions soon evolved to temper application of the common-law rule. However, in the absence of a statute or other provisions which show the settlor intends the gift to go to some other designated person when the beneficiary predeceases the settlor, the gift lapses. See *In re Estate of Thompson*, 213 Kan. 704, 705-06, 518 P.2d 393 (1974). Plaintiffs argue that such an anti-lapse provision is contained in the Trust to prevent its inclusion in the remainder estate. Accordingly, the issue is now moot.

As a general rule, Kansas appellate courts do not decide moot questions or render advisory opinions. *State v. Montgomery*, 295 Kan. 837, 840, 286 P.3d 866 (2012). The mootness doctrine is one of court policy, under which the court is to "'determine real controversies relative to the legal rights of persons and properties which are actually involved in the particular case properly brought before it and to adjudicate those rights in such manner that the determination will be operative, final, and conclusive.' [Citations omitted.]" *Stano v. Pryor*, 52 Kan. App. 2d 679, 682-83, 372 P.3d 427 (2016) (quoting *State v. Hilton*, 295 Kan. 845, 849, 286 P.3d 871 [2012]).Appellate review of whether a case should be dismissed for mootness is unlimited. *Hilton*, 295 Kan. at 849.

15

An issue on appeal will only be dismissed as moot if the parties can show clearly and convincingly that the actual controversy has ended, the only judgment that the court could enter would be ineffectual for any purpose, and the judgment would not impact any of the parties' rights. *Wiechman v. Huddleston*, 304 Kan. 80, 84, 370 P.3d 1194 (2016). Here, the parties seem to agree that whether Herlinda's death makes the issues presented in this appeal moot depends on an interpretation of the anti-lapse provisions of the Trust. As mentioned, when resolving any issues requires the interpretation of a written instrument, our review is unlimited. *Hamel*, 296 Kan. at 1068 ("The interpretation and legal effect of a written instrument is a matter of law over which we exercise unlimited review.").

As the starting point for this inquiry, Plaintiffs direct this court's attention to Paragraph IV(C), which provides that the distribution of gifts is "subject to the provisions of ARTICLE IV, PARAGRAPH F hereinbelow." In particular, Plaintiffs refer to Paragraph IV(F)(4), which provides:

> "Upon the death of a beneficiary for whom a trust is then held prior to final distribution to such beneficiary, if said decedent is survived by issue, that portion of such trust (including both principal and any accrued or undistributed income) . . . shall be distributed to such one or more persons or entities . . . as the decedent shall have appointed by the last dated instrument delivered to the Trustee, including a Will (whether or not admitted to probate), specifically referring to and exercising this power of appointment. Any of such portion of the trust as is not appointed . . . shall be distributed according to the terms of ARTICLE IV PARAGRAPH E hereinabove as though said beneficiary had predeceased the Grantor."

Defendant argues that Paragraph IV(F)(4) only applies when the beneficiary is under the age of 21 because other provisions in Article IV(F) contain that requirement. But unlike those other provisions, Paragraph IV(F)(4) specifically omits an age

16

requirement, and by express reference, applies to the gift distribution provision in Paragraph IV(C).

That said, the death of a beneficiary before "final distribution to such beneficiary" triggers the anti-lapse provision in Paragraph IV(F)(4) and first priority goes to "such one or more persons or entities" designated by the beneficiary to receive the distribution. In other words, upon William's death, the persons designated in a will or other instrument would receive the House. Although there is no evidence in the record to suggest William designated Plaintiffs as the recipients of the House by appointment in a will, the William Deed qualifies as such an instrument since it purported to name William and Plaintiffs as joint tenants with rights of survivorship. But even if no such appointment by will existed, then the Trust still required the trustee to distribute the House "according to the terms of ARTICLE IV PARAGRAPH E hereinabove as though said beneficiary had predeceased the Grantor."

Under Paragraph E: "In the event a beneficiary named in Paragraph D of this Article IV is not then living, *the share of such deceased beneficiary shall be distributed equally among the living children*, by birth or adoption, of such beneficiary." (Emphasis added.) Defendant emphasizes that this particular paragraph seemingly excludes the distribution of gifts by only referring to "a beneficiary named in Paragraph D of this Article IV," but the cross-references mentioned above contradict that interpretation. Simply put, the terms of the Trust require that Plaintiffs would end up receiving the House, even if William predeceased Herlinda. For that reason, resolving whether Herlinda's death was a prerequisite for distribution of the House would now be moot since Herlinda is no longer living.

But as indicated above, mootness is a doctrine of court policy. Here, the Plaintiffs raised the inevitable application of the anti-lapse provision in the district court, although the district court did not address it. Plaintiffs did not cross-appeal the district court's lack

17

of findings on the effect of the anti-lapse provision. Accordingly, we elect not to dismiss the case on that basis and instead stand on our findings on the merits of the case that the plain language of the Trust allowed William to transfer the House to herself and her children while Herlinda was still alive and that the Defendant has failed to establish that by doing so William breached any fiduciary duty owed to the Trust.

Affirmed.