NOT DESIGNATED FOR PUBLICATION

No. 122,421

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Estate of
ROSA LEE RANEY.

MEMORANDUM OPINION

Appeal from Trego District Court, GLENN R. BRAUN, judge. Opinion filed August 6, 2021.
Affirmed.

*Carl Arthur Raney*, appellant pro se.

*Donald F. Hoffman*, of Dreiling, Bieker & Hoffman LLP, of Hays, for appellees.

Before ARNOLD-BURGER, C.J., GARDNER and ISHERWOOD, JJ.

PER CURIAM:  After Rosa Lee Raney died in 2016, the district court appointed her son Wayne as the estate's executor. Wayne submitted Rosa's will and first codicil to probate. The will included a set-off provision to treat any loans Rosa had given to her other son, Carl, as advancements. The codicil added a no contest clause disinheriting any heir who contested her will. After Carl filed several motions in response to the filing of Rosa's will, Wayne moved to enforce the no contest clause. The day before the hearing on the parties' motions, the district court allowed Carl's attorney to withdraw as counsel and denied his motion to continue the hearing. Carl did not appear at the hearing, and the court entered judgment against him.

Carl now appeals pro se, arguing, among other things, that he had probable cause to challenge the will, so the district court should not have enforced the no contest clause

1

against him. Carl also claims improper actions by Wayne and the district court judge. Finding no error, we affirm.

*Introduction to the Parties and Overview of Decedent's Decline in Health*

Rosa suffered a stroke in 2010. Both Wayne and Rosa's daughter, Virginia Cauthorn, petitioned for Wayne to be appointed as the guardian and the conservator of her estate. In support, Wayne submitted a letter from Dr. Victor M. Nemechek, which explained that the stroke had impaired Rosa's short-term memory and the left side of her body. Dr. Nemechek stated that Rosa lacked the "capabilities to remember and to make rational decisions on her own in regards to taking care of herself, as well as her financial affairs." But on the day that petition was set for hearing, it was dismissed. Rosa then filed her own petition requesting voluntary appointment of Wayne as guardian and conservator. Carl objected. But over Carl's objection, the district court granted Rosa's petition and appointed Wayne to serve in both roles. The district court later dismissed the guardianship portion of Rosa's petition. See *In re Guardianship & Conservatorship of Raney*, No. 110,841, 2015 WL 5927053, at *1 (Kan. App. 2015) (unpublished opinion) (finding Wayne did not breach his fiduciary duties as conservator for Rosa).

Rosa suffered another stroke in September 2011. Wayne again sought appointment as Rosa's guardian in Case No. 2011-PR-3. While that case was pending, Wayne's attorney, Donald F. Hoffman, received a letter from Rosa's physician, Dr. Seeley T. Feldmeyer. That letter summarized Rosa's condition and suggested that Rosa would need help in making a variety of decisions. Hoffman sent the parties a copy of the letter, explaining that he did not know why it had been prepared because neither he nor Wayne had requested it. The court later appointed Wayne as Rosa's temporary guardian in August 2014.

2

*Filing of Rosa's Will and First Codicil and Petition to Represent the Estate*

Rosa died testate on April 15, 2016. In her will, Rosa named her three children as the beneficiaries of her estate. She nominated Wayne and Virginia as co-personal representatives, but Virginia resigned as co-executor. And while other matters were pending in the district court, Wayne petitioned to be appointed as a special administrator of the estate.

Wayne filed Rosa's will and first codicil in the district court in May 2016. Both documents were signed by two witnesses. The will—executed in October 2011—directed certain tangible assets and real properties be distributed to the heirs as specifically named. Rosa left her ownership interest in a property in Belize to Wayne but divided the revenue or royalties of any associated mineral interests to all three beneficiaries. See generally *In re Guardianship & Conservatorship of Raney*, 2015 WL 5927053 at *4 (explaining Rosa's interest in Belize property). And the "remaining cash, other liquid assets, and all of the rest, residue, and remainder" of the estate was to be divided equally between the three beneficiaries as well.

But the will also included a clause requiring repayment of outstanding loans, including loans Rosa had made to Carl and loans Wayne and Virgina had made to Rosa:

> "I have previously borrowed money from my children, **VIRGINIA LEE CAUTHORN and WAYNE LEWIS RANEY**, Said loans are not fully repaid by me at the time I execute this Will. I direct my Personal Representatives to determine the amounts outstanding on said loans. The outstanding amounts shall be considered as a debt of my estate and my estate shall be obligated to repay the outstanding amounts to said children for the amounts that they are owed.

> "Additionally, I have previously loaned money to **CARL ARTHUR RANEY** and said loans have not been fully repaid at the time I execute this Will. I direct my

Personal Representatives to determine the amounts outstanding on the loans that I have made to **CARL ARTHUR RANEY**. The outstanding amounts shall be considered as amounts owing to my estate. Said outstanding amounts shall also be considered as an advancement of **CARL'S** share of my Estate and **CARL'S** share of my estate shall be reduced accordingly."

Rosa executed the codicil to her will on July 29, 2013. The codicil specifically referenced the will and added an *in terrorem*, or no-contest, clause to the will. That clause provided that anyone who contested Rosa's will would forfeit his or her share of the estate and instead receive a total of $1.00:

"Should any person entitled to share in my estate either as an heir at law or as a legatee or devisee under this will contest or oppose or seek to set aside this will or establish any legal right to share in my estate other than as herein approved and provided, I hereby give and bequeath to each such person the sum of One Dollar ($1.00) only. I expressly direct that he or she shall receive no other further share in my estate. The share to which such person might otherwise have been intitled had he or she not participated in such contest or opposition or to which he or she might have been entitled had I died intestate, I give, devise, and bequeath equally, share and share alike, to the other [legatees] and devisees mentioned in this will who may not have joined in such contest or opposition."

*Carl Objects to the Admission of the Will, Order Admitting Will to Probate, and Wayne's Appointment as Executor*

The district court set the admission of Rosa's will to probate for a hearing on June 20, 2016. Wayne mailed a notice of the hearing to Carl on May 31, 2016.

On June 14, Carl moved pro se for a continuance, stating:

4

- He had an interest in the estate and "contested these actions;"

- He was required to attend court in Belize on June 20, 2016;

- Venue was not proper in Trego County;

- Wayne "reconstructed the will to be in his advantage;"

- He believed "all assets should have been distributed in an equal manner and [he] [wanted] the opportunity to provide a proper defense in this merit;"

- A continuance was necessary and he "[did] contest the will."

Carl attached copies of a 2012 report detailing Rosa's condition and a copy of a letter from Wayne and Virginia detailing the events of Rosa's fall and resulting surgery in 2011.

On June 17, 2016, Carl filed a pro se request for a show cause order, requesting Wayne submit documented proof that Rosa's will was legally binding and her signatures were not forged. Carl again accused Wayne of reconstructing Rosa's will to his advantage and asked for a continuance and change of venue. He requested a phone conference or a hearing at a time that would also allow him to appear in court in Belize. Carl also requested a change of judge, alleging bias and contending that the district judge had ignored Wayne's allegedly improper and illegal conduct.

The district court did not hold a hearing on Wayne's petition to be appointed as a special administrator until July 12, 2016. The district court noted that although no one opposed Wayne's request, Carl had filed several pro se pleadings opposing other issues. The district court did not make any formal rulings during the hearing and explained that it would set additional matters for later hearings. Then, on July 13, 2016, the district court appointed Wayne as a special administrator of the estate.

On July 20, 2016, Wayne's counsel filed a notice of trial, stating Carl's challenge to Rosa's will was set for a hearing on October 5, 2016. Counsel sent the notice to Carl at his last known address and email address.

In September 2016, Carl filed a petition for allowance and a demand for payment against Rosa's estate for $2,200,000. Carl sought that amount for his service as farm manager for the family farm in Belize, consisting of 4,439 acres.

At the October 5 hearing, Mark Ayesh entered his appearance on Carl's behalf. Carl did not provide a transcript of this hearing in the record on appeal, and the district court's notes state only that a "Bench Trial" occurred. So we cannot tell what was discussed or agreed to at the trial.

On October 11, 2016, the district court issued an order admitting Rosa's will and first codicil to probate and appointing Wayne as executor. The court specifically found:

> "[T]he capacity of the testator and the due execution of said will are proved in accordance with K.S.A. 59-601, 59-606 and 59-2224; that the instrument dated October 11, 2011, and the first codicil dated July 29, 2013, and filed with the petition, is the last will and testament and first codicil of Rosa Lee Raney, deceased; that at the time of the execution of said last will and testament and codicil, the decent was of legal age, of sound mind and not under any restrain; that said will was in full force and effect at the date of the death of the decedent and said instruments should be admitted to probate and record."

On July 11, 2017, the district court allowed Ayesh to withdraw as counsel based on his representation that Carl failed to pay him for his services.

*Carl's Petition for Allowance and Classification of Demand*

As the administration of the estate continued, Wayne filed a notice of the pending claims against the estate. As a result, the district court set the matter of the claims for a hearing on March 6, 2018. The notice listed the demands from each of the beneficiaries, including Carl's claim for $2,200,000.

The day before the scheduled hearing, Wayne filed a copy of a ruling from a trial court in Belize to show that the court should deny Carl's demand for payment. The Belize court addressed Carl's demand for $2,200,000 against the estate. In short, Carl had filed a lawsuit in Belize asserting that members of his family, including Wayne, had agreed to pay Carl to manage the family's jointly owned farm in Belize. But the Belize court found no evidence showing the parties had entered into such an agreement or that the family property was a farm. As a result, the Belize trial court denied Carl's demand for $2,200,000 and ordered the sale of the property and payment of the proceeds to the estate.

Carl did not appear at the March 6 hearing. The district court entered its judgment on March 8, 2018, granting Wayne and Virginia's claims but denying Carl's claims because of the judgment from the Belize court.

Carl later hired a new attorney, Steve Iverson. But neither Carl nor Iverson challenged the district court's March 8, 2018 judgment until nearly a year later, when Iverson moved on March 6, 2019 to reinstate Carl's claim. That motion attached a copy of Carl's appeal from the Belize court's opinion.

The district court held a status conference on March 26, 2019, allowing the parties to participate by phone call. Iverson appeared on Carl's behalf but because Carl's appeal of the Belize decision was still pending, the district court did not consider any issues related to Carl's motion to reinstate. But in a later order filed on August 29, 2019, the

district court dismissed Carl's motion to reinstate, finding it lacked jurisdiction to consider the motion because it was untimely.

*Wayne's Motion to Enforce the* In Terrorem *Clause or to Set-off Advancements*

Wayne then moved to enforce the will's *in terrorem* clause or alternatively to determine the amount of loans Carl had received during Rosa's life and to deduct that amount from Carl's share of the estate. The district court granted Carl's request to continue the hearing to August 15, 2019.

Two days before the scheduled hearing, Iverson moved to withdraw as Carl's attorney, citing Kansas Rule of Professional Conduct 226 (2020 Kan. S. Ct. R. 283). Iverson's motion stated that although he had warned Carl that he would be forced to withdraw if Carl's behavior persisted, Carl insisted on "pursuing an objective that [Iverson] consider[ed] imprudent." See KRPC 1.16(b)(2) (2020 Kan. S. Ct. R. 341). Iverson filed a notice of his withdrawal and explained to Carl that he had 14 days to object to the withdrawal in writing. Iverson had told Carl that the hearing was still scheduled for August 15, 2019, but he also moved for a continuance on Carl's behalf. The certificates of service show that Iverson's motions were transmitted to Carl electronically and were also mailed to Carl in Belize on August 13, 2019.

The district court conducted a hearing, considered Iverson's motions, and allowed Iverson to withdraw as counsel based on his statement that he and Carl could no longer continue in their attorney-client relationship. The district court denied Iverson's request for a continuance and directed Iverson to notify Carl that it would conduct the hearing as scheduled. The district court found that no continuance was warranted because Carl had failed to attend hearings throughout the litigation in this case and in the related conservatorship case. The court also found that Carl regularly requested last-minute continuances that resulted in unnecessary delays.

8

So Carl did not appear at the August 15, 2019 hearing. Still, the district court considered Wayne's motion to enforce the will's *in terrorem* clause and allowed Wayne's attorney to proffer facts supporting its enforcement. The district court found that Carl triggered the clause by filing two motions contesting the will:

- Request for a Continuance Disputing the Terms and Provisions of the Last Will and Testament of Rosa Lee Raney and Her First Codicil to Her Last Will and Testament, filed June 14, 2016; and
- Motion to Strike and for Additional Information, filed September 18, 2016.

The district court thus held that Carl was disinherited under the will.

Anticipating Carl's appeal, the district court also granted Wayne's alternative request to set-off Carl's share of the estate by the amount he had received as loans from Rosa—$256,143.53. The district court found that even though recovery of that amount would be barred by the statute of limitations, set-off was still appropriate under the terms of will, so Carl's share would be reduced by that amount. In a supplemental journal entry of judgment, the district court denied Carl's pending motions. Wayne then served the journal entry detailing the district court's ruling on Carl by mail, using Carl's last address that Iverson had given the court.

Carl timely appealed. He filed a pro se appellate brief in this court, challenging each of the district court's rulings against him and claiming judicial bias.

*Carl's Brief is Inadequate.*

Before we address the substance of Carl's claims, we must address a procedural matter. Carl's brief does not comply with Supreme Court Rule 6.02(a) (2021 Kan. S. Ct. R. 35), because it makes factual statements without citing the volume and page number of

the record, and it fails to cite authorities, among other defects. We could justly find that Carl has inadequately briefed every issue or that Carl has waived or abandoned his claims. See *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017). But Wayne and Virginia (collectively referred to as appellees) filed a response brief showing they understand the issues Carl raises. Because Carl has raised his claims with sufficient clarity to allow for meaningful appellate review, we choose to address his claims on the merits.

*Did the District Court Err in Enforcing the* In Terrorem *Clause?*

We first address Carl's claim that the district court erred in enforcing the *in terrorem* clause against him. "An *in terrorem* clause is a clause in a will in which a testator imposes upon a devisee or legatee a condition that he or she shall not dispute the provisions of the will or the gift shall be void." *In re Estate of Koch*, 18 Kan. App. 2d 188, 207, 849 P.2d 977 (1993). Our appellate courts recognize the enforceability of *in terrorem* clauses that are not contrary to law or public policy. See *In re Estate of Haneberg*, 270 Kan. 365, 372, 14 P.3d 1088 (2000).

*Rosa's testamentary capacity*

Carl does not contend that Rosa's *in terrorem* clause is contrary to law or public policy. Rather, Carl argues that the district court should not have enforced the *in terrorem* clause because, as the record showed, Rosa lacked the requisite testamentary capacity to execute the codicil that added the clause to her will. But the time to raise that claim was when the district court admitted Rosa's will and codicil to probate. See K.S.A. 59-2213 (providing court may consider challenges to probate orders for 30 days before they become final); *In re Estate of Butler*, 301 Kan. 385, 394-95, 343 P.3d 85 (2015) (failure to timely appeal final order resulted in failure to preserve interest in estate).

10

A critical basis of the district court's judgment was its finding that Rosa had the requisite capacity to execute her will and codicil. The district court found that the will was executed in accordance with basic statutory requirements. And the two attesting witnesses who signed Rosa's will indicated that, to the best of their knowledge, Rosa was of sound mind and under no constraint or undue influence. The two witnesses to Rosa's codicil made the same acknowledgment. Carl needed to timely challenge that decision to preserve his right to appeal the issue of Rosa's testamentary capacity. Carl never did so.

Nor did Carl ever raise the issue of Rosa's testamentary capacity in the district court. "Litigants generally are precluded from raising an issue on appeal when they failed to raise the issue in the district court." *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019). Although some exceptions to that rule exist, a litigant must explain why the issue is properly raised for the first time on appeal. 309 Kan. at 995; Rule 6.02(a)(5) (2021 Kan. S. Ct. R. 35). Carl has not made such an explanation. Although he is proceeding pro se, Carl is not excused from following the same procedural rules that attorneys are required to follow. See *Guillory v. State*, 285 Kan. 223, 229, 170 P.3d 403 (2007). So we cannot address on appeal Carl's claim that Rosa lacked testamentary capacity because he did not raise that claim in the district court. Carl's motions in the district court raised issues about undue influence and forgery, but he does not raise those issues on appeal and has thus waived and abandoned them. See *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018).

*Basic Principles and Applicable Test for Enforcement of No-contest Provisions*

We do address Carl's broader argument that the district court erred in enforcing the *in terrorem* clause against him. Kansas courts recognize a probable cause exception to the enforcement of *in terrorem* provisions. Our appellate courts generally find an *in terrorem* clause "valid and enforceable against a beneficiary who attacks the validity of the will, or provisions therein, unless the beneficiary had probable cause to challenge the will or its

provisions." *Hamel v. Hamel*, 296 Kan. 1060, 1075, 299 P.3d 278 (2013). We make this determination via a two-part analysis:

- Whether the beneficiary's actions violated the express terms of the clause; and
- if they did, whether the beneficiary had probable cause to take said actions. 296 Kan. At 1075-76.

*Carl violated the* in terrorem *provision.*

To determine whether Carl's acts violated the express terms of the clause, we necessarily look first to the language of the clause. "[T]he primary function of the court is to ascertain the testator's intent from the four corners of the will and to carry out that intent if possible and if not contrary to law or public policy." *Haneberg*, 270 Kan. at 372. The construction of a written instrument, including a will, presents a question of law when the document, analyzed in its entirety, contains no pertinent ambiguity. *In re Estate of Cline*, 258 Kan. 196, 199, 898 P.2d 643 (1995). If a review of the will establishes that the testator's intent is clear, the document is unambiguous and should be enforced consistent with its apparent intent. *Haneberg*, 270 Kan. at 371.

Rosa's intent is clear. The *in terrorem* clause, incorporated in Rosa's will through the codicil, penalized any interested party who might "contest or oppose or seek to set aside th[e] will or establish any legal right to share in [Rosa's] estate other than as herein approved and provided." That is broad language. Rosa also included a provision in her will allowing unsupervised administration of her estate to "avoid unnecessary costs and delay." And she specifically required that any money she loaned to Carl be repaid to the estate, or if left unpaid, be set-off from Carl's share of the estate. The breadth of these provisions and their focus on reducing litigation costs shows a clear intent to prevent such disputes. Because Rosa's intent is clear, we consider it in determining whether Carl's actions violated the terms of the *in terrorem* provision.

The district court relied on two motions in finding that Carl violated the *in terrorem* clause. In his first motion, Carl specifically stated that he was contesting the will. True, some courts have recognized an exception to finding a violation of an *in terrorem* clause when the contesting party initiates litigation to ensure a representative complies with their fiduciary duties. See, e.g., *Callaway v. Willard*, 321 Ga. App. 349, 357-58, 739 S.E.2d 533 (2013). And other jurisdictions have considered the propriety of impeding litigation that might reveal improper acts. See, e.g., *Alper v. Alper*, 2 N.J. 105, 112, 65 A.2d 737 (N.J. 1949). But Carl does not raise these policy concerns as a basis of his claim on appeal, and the record shows that they should not be applied here.

In both motions that the district court found violated the *in terrorem* clause, Carl raised a general allegation that Wayne "reconstructed the will to . . . his advantage." But Carl made this allegation in the paragraphs asserting that venue was improper, tacitly implying that Wayne had shopped for a venue most beneficial to his interest in the estate, and specifically contending that Wayne should have filed in Ford or Stanton County.

And Carl then argued that "all assets should have been distributed in an equal manner" and asked for an opportunity to explain why he "was owed these properties." As this language shows, Carl's motions do more than try to enforce basic administrative duties—they sought to modify Rosa's distributions. Cf. *Norman v. Gober*, 292 Ga. 351, 354, 737 S.E.2d 309 (2013) (differentiating between contests seeking "to destroy the [w]ill altogether" and those petitioning "for accounting and for the removal of an executor," explaining the latter affirms the validity of a will). Thus Carl did not affirm but rather challenged the validity of the will.

Carl does not argue that the *in terrorem* clause is contrary to law or public policy. And we find that it is not. Although the *in terrorem* clause impeded Carl's ability to freely litigate issues related to the validity of the will, that broad policy concern is outweighed by the importance of enforcing Rosa's will consistent with her apparent intent. See

13

Begleiter, *Anti-Contest Clauses: When You Care Enough to Send the Final Threat*, 26 Ariz. St. L.J. 629, 678-79 (1994) (discussing propriety of allowing policy implications to trump testator's intent). Keeping in mind the general purpose of an *in terrorem* clause and Rosa's specific intent to avoid litigation, we agree that by Carl's motions he contested the will and violated the *in terrorem* clause.

*Carl did not have probable cause to contest the will.*

We thus reach the second part of the *Hamel* analysis—whether the beneficiary had probable cause to violate the express terms of the no contest clause. 296 Kan. at 1076. We use *Hamel's* definition of probable cause: "'[T]he existence, at the time of the initiation of the proceeding, of evidence which would lead a reasonable person, properly informed and advised, to conclude that there is a substantial likelihood that the contest or attack will be successful.' [Citation omitted.]" 296 Kan. at 1078 (quoting Restatement (Second) of Property: Donative Transfers § 9.1, comment j [1981]).

*Procedural Errors Preclude Review of Carl's Defense to the Enforcement of the* In Terrorem *Clause*

Carl argues that the district court should not have enforced the *in terrorem* clause against him because evidence showed that Rosa lacked the necessary testamentary capacity to execute the 2013 codicil adding the provision to her will. But as we found above, Carl did not make this argument in the district court, so this claim is unpreserved. See *Johnson*, 309 Kan. at 995; Supreme Court Rule 6.02(a)(5).

But Carl does not need to establish that the codicil was void. Rather, Carl needs to show only that he had probable cause to make the claims that he raised in the district court challenging the validity of the will—claims of undue influence and forgery. In both motions that the district court relied on in applying the *in terrorem* clause, Carl argued

14

that Rosa was unduly influenced by Wayne. Carl attached several documents to his first motion, seemingly to show that Wayne had the opportunity to influence Rosa's testament due to her diminished physical and mental state. In his second motion, Carl also implied that Wayne had forged Rosa's signature or done some other criminal act to produce a will disfavoring Carl, but Carl did not provide any evidence supporting either of those claims. As noted above, Carl failed to brief those issues on appeal, so he has waived or abandoned them. See *Arnett*, 307 Kan. at 650.

### *The District Court's Finding of No Probable Cause*

Even if Carl had properly preserved and briefed his claims of undue influence and forgery, we find no reason to reverse. The district court's determination that Carl lacked probable cause to challenge the will was a negative finding. When reviewing negative findings, we consider "whether the district court arbitrarily disregarded undisputed evidence or relied on some extrinsic consideration such as bias, passion, or prejudice to reach its determination." *Hamel*, 296 Kan. at 1078. We apply that standard here and find the district court's determination to be correct.

In its order admitting Rosa's will to probate, the district court found that Rosa's will was executed in accordance with the formalities required by the law. So Carl had the burden to show that Wayne exerted undue influence in the making of Rosa's will. See *In re Estate of Ziegelmeier*, 224 Kan. 617, 622, 585 P.2d 974 (1978); see also *In re Estate of Perkins*, 210 Kan. 619, 626, 504 P.2d 564 (1972) (finding burden on will contestant to prove incapacity of testator). As the contesting party, Carl needed to prove his claim by clear and convincing evidence. See *In re Estate of Bennett*, 19 Kan. App. 2d 154, 164-65, 865 P.2d 1062 (1993).

Undue influence "must amount to such coercion, compulsion and restraint as to destroy the testator's free agency, and by overcoming his power of resistance, obliges or

causes him to adopt the will of another rather than exercising his own." *In re Estate of Hall*, 165 Kan. 465, 470, 195 P.2d 612 (1948); see *In re Estate of Carothers*, 220 Kan. 437, 443, 552 P.2d 1354 (1976). "Legitimate influence is not improper." *Ziegelmeier*, 224 Kan. at 622.

Courts typically apply a two-prong analysis when considering these claims. First, the moving party must show a confidential and fiduciary relationship existed between the parties. *Bennett*, 19 Kan. App. 2d at 165. Then the movant must show proof of suspicious circumstances surrounding the making of the will. If the moving party provides sufficient proof of both, the burden shifts back to the proponent of the will to combat the allegations. 19 Kan. App. 2d at 169. Applying *Bennett*'s two-part test, we find the record shows a confidential and fiduciary relationship between the parties because Wayne was acting as Rosa's legal guardian when she executed the will.

So we ask whether Carl showed proof of suspicious circumstances surrounding the making of the will. On appeal, Carl points only to Dr. Feldmeyer's letter dated August 6, 2012, to support his claim:

> "Mrs. Rosa Raney had been under my care since February 16, 2012. Her diagnosis includes Cerebrovascular Accident (stroke) that has a late effect of hemiplegia of the upper limb non dominant side. Dementia with behavioral disturbance, Hypertension, and Aortic Valve Disorder.
>
> "She currently resides in the Lone Tree Nursing Home facility for 24 hour care. It is my opinion that Mrs. Raney is not capable in making rational [decisions] in her best interest in regard to her health, finances and over all living situation."

In the district court, Carl also attached documents showing that while Wayne was acting as Rosa's guardian, Rosa fell and hurt herself while staying in an assisted living facility, which led to surgery and other complications. She also suffered another stroke.

But nothing in the record shows Wayne was at fault for Rosa's medical difficulties. Instead, the record shows that Wayne acted diligently and appropriately in his positions as guardian and conservator. And Rosa's will did not substantially benefit Wayne more than the other beneficiaries so as to suggest that something suspicious occurred. See *In re Estate of Mueller*, No. 119, 398, 2019 WL 2554344, at \*8 (Kan. App. 2019) (unpublished opinion) (considering circumstances that would normally appear suspicious but noting these findings depend on the specific facts of each case).

The district court did not arbitrarily disregard undisputed evidence or rely on some extrinsic consideration such as bias, passion, or prejudice to find that Carl failed to show undue influence or forgery. To the contrary, the record contains substantial competent evidence supporting the district court's finding that Carl lacked probable cause to object to the admission of the will to probate. The district court thus properly invoked and enforced the *in terrorem* clause against Carl and found that he was disinherited.

We find it unnecessary to reach Carl's separate claim that the district court erred in its alternative finding that if Carl was not disinherited, then Rosa's loans to Carl in the amount of $256,143.53 were advances against Carl's inheritance.

*Did the District Court Abuse its Discretion in Denying Carl's Motion to Reinstate His Request for Allowance and Classification of Demand?*

Carl argues that the district court should have allowed him to reinstate his 2.2 million dollar claim for payment of farm "manager's fees" pending a final ruling on his appeal from the Belize trial court's denial of that claim. But Carl did not appeal the district court's denial of his original motion within 30 days. Rather he waited a year to move to reinstate his claim, so the district court was not authorized to modify its final judgment. See K.S.A. 59-2213. And Carl does not provide any legal support for this claim. See *In re Adoption of T.M.M.H.*, 307 Kan. 902, 912, 416 P.3d 999 (2018) (failure

17

to support point with pertinent authority is akin to failing to brief issue). And contrary to Carl's argument, the district court did not err by allowing Hoffman to submit a copy of the Belize decision denying Carl's claim. That decision had a direct bearing on the issues in the district court, and Carl fails to meet his burden to show the district court abused its discretion by admitting it. See *Biglow v. Eidenberg*, 308 Kan. 873, 892, 424 P.3d 515 (2018); *Schmeck v. City of Shawnee*, 232 Kan. 11, 32, 651 P.2d 585 (1982).

Carl also contends that he should be granted relief from the judgment entered on March 8, 2018, denying his original demand because he did not receive notice of Wayne's "Notice of Claims" and was thus unaware of the scheduled hearing. But Carl did not raise that lack of notice in the district court, so it too is unpreserved and thus not properly raised here. See *Johnson*, 309 Kan. at 995; Rule 6.02(a)(5). And at any rate, the record shows that Hoffman properly served Carl notice of that hearing by email, using his last known email address.

*Did the District Court Abuse its Discretion in Denying Carl's Motion for a Continuance After Allowing Iverson to Withdraw?*

Next, Carl argues that the district court abused its discretion by denying Iverson's motion for a continuance of the August 15, 2019 hearing. A judicial action is an abuse of discretion if it is arbitrary, fanciful, or unreasonable or based on an error of fact or law. *Eidenberg*, 308 Kan. at 893. But Carl does not argue the decision was any of those things. Instead, he argues that the district court denied the request because the judge was biased against him and intended to put him at a disadvantage. He also asserts that the circumstances requiring a continuance arose without any fault on his part.

K.S.A. 2020 Supp. 60-240(b) gives a district court the authority to "continue an action at any stage of the proceedings on just terms" for good cause. We review a continuance decision for an abuse of discretion and will not reverse unless Carl can

convince us that no reasonable person would have taken the view adopted by the district court. See K.S.A. 2020 Supp. 60-240(c)(3) (grant or denial of continuance "is discretionary in all cases"); *Miller v. Glacier Development Co.*, 284 Kan. 476, 494, 161 P.3d 730 (2007) (burden on moving party to establish abuse).

Courts must take all circumstances into account when ruling on a motion for continuance, including the applicant's good faith and due diligence and the lawsuit's timetable. Discretion is not abused when reasonable minds could differ as to the propriety of the action taken by the district court. *In re J.A.H.*, 285 Kan. 375, 385, 172 P.3d 1 (2007).

Claiming an inability to continue an attorney/client relationship with Carl, Iverson moved to withdraw as counsel just two days before the hearing on Carl's motion to reinstate his claim and Wayne's motion to enforce the *in terrorem* clause. The day before the hearing, the district court allowed Iverson to withdraw but denied his request to grant Carl a continuance. The district court explained that it would not grant another continuance because the proceedings had been ongoing for a long time and Carl consistently failed to appear at scheduled hearings. The record supports both of those findings. And Carl does not explain why he could not be there.

Additionally, Carl was first made aware of the hearing, originally scheduled for June 25, 2019, on May 2, 2019. Carl requested a continuance and the district court granted it, so Carl had ample time to prepare. Iverson had warned Carl of his intent to withdraw if Carl did not stop pursuing claims that Iverson believed were "imprudent." The certificates of service show that Iverson sent his notice and motion to Carl electronically and also mailed them to Carl in Belize on August 13, 2019. Also, Iverson promised the district court that he would advise Carl of his withdrawal and the denial of Carl's request for a continuance. We trust he did so.

19

Moreover, given the procedural posture of Carl's motion to reinstate his claim, it is unlikely that his presence at the hearing would have changed its result. The district court dismissed that claim because Carl had failed to timely challenge its previous order denying the claim. Reversal is not warranted where, as here, a party fails to show that the denial of a continuance resulted in actual prejudice. See *State ex rel. Miller v. Richardson*, 229 Kan. 234, 239, 623 P.2d 1317 (1981).

Because Carl does not establish that no reasonable person would adopt the position taken by the district court, he fails to provide sufficient grounds to reverse the district court's order denying his request for a continuance.

*Does Carl Validly Challenge the District Court Judge's Qualification to Continue Presiding Over this Case?*

For his last issue, Carl generally alleges bias against the chief judge, Glenn Braun, who has presided over this case for most of its yearslong proceedings. Carl moved for the assignment of a different judge on June 17, 2016, and a hearing was set for September 20, 2016. But Carl fails to include a transcript from that hearing in the record on appeal. See *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644, 294 P.3d 287 2013) (duty to designate record). And Carl fails to cite the record showing us any order that decided his motion, so we cannot tell whether Carl's appeal of this issue is from a final judgment, as is necessary for us to have jurisdiction. See *Butler*, 301 Kan. at 395 (a judgment is final if it "definitely terminates a right . . . involved in the action"); K.S.A. 2020 Supp. 60-2102(a)(4) ("[T]he appellate jurisdiction of the court of appeals may be invoked by appeal as a matter of right from: . . . [a] final decision in any action."). As a result, we have no choice but to presume that the district judge's decision was supported by the record and Carl's claims to the contrary fail.

Affirmed.

20